# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN WATERWAYS OPERATORS, | ) ) ) |
| Plaintiff, | ) ) ) Case No. _____ |
| v. | ) ) |
| UNITED STATES COAST GUARD, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

### Preliminary Statement

1.      Plaintiff American Waterways Operators ("AWO"), by and through its undersigned counsel, brings this Complaint against Defendant United States Coast Guard ("Coast Guard") to compel Defendant to comply with the remand directives of the United States Court of Appeals for the First Circuit ("First Circuit") and the United States District Court for the District of Massachusetts ("District Court"). *See United States v. Coal. for Buzzards Bay*, 644 F.3d 26 (1st Cir. 2011) (Selya, C.J.); Order of Remand, Stay & Admin. Closing, Aug. 19, 2011, ECF No. 187, *United States of America, et al. v. Commonwealth of Massachusetts, et al.*, Civ. A. No. 1:05-cv-10112-DPW (D. Mass.).

2.      This case is related to *United States of America, et al. v. Commonwealth of Massachusetts, et al.*, Civ. A. No. 1:05-cv-10112-DPW (D. Mass.) ("*United States v. Massachusetts*"), and *American Waterways Operators, et al. v. Deval Patrick, et al.*, Civ. A. No. 1:10-cv-10584-DPW (D. Mass.) ("*AWO v. Patrick*"). These related cases have been pending before the District Court for thirteen years and eight years respectively, and have been

administratively closed by order of the District Court since August 19, 2011, pending the Coast

Guard's completion of remand proceedings.

3.       For more than fourteen years, AWO members' activities in Buzzards Bay,

Massachusetts, have been subject to a conflicting web of federal and Massachusetts state laws

and regulations. Twice, the District Court enjoined the enforcement of the Massachusetts laws,

finding that the Massachusetts laws were both expressly preempted and conflict preempted by

the Ports and Waterways Safety Act, Pub. L. No. 92-340, and a final rule promulgated by the

Coast Guard that set tank vessel and tugboat requirements for vessels in Buzzards Bay. In 2011,

however, the First Circuit determined that the Coast Guard's procedural non-compliance with the

requirements of the National Environmental Policy Act ("NEPA") necessitated vacatur of the

District Court's injunction and remand to the Coast Guard. The Coast Guard presented its first

attempt to comply with the First Circuit's remand more than three years ago, but following a

colloquy with the District Court at a January 2015 hearing, withdrew its request to reopen *United

States v. Massachusetts*. Since that time, the Coast Guard has not moved any closer to

completion of its remand proceedings. The Coast Guard has not taken timely and definite steps

toward compliance with the directive of the First Circuit remand. Thus, AWO brings this action

to obtain the Coast Guard's completion of remand proceedings ordered in the first place by the

First Circuit.

4.       AWO seeks straightforward relief mandated directly from the First Circuit's

decision. A federal agency, like any other party, is required to comply with an order issued by a

federal court. When an agency's compliance with that order is not forthcoming, the courts have

the power to compel the agency to take all necessary action to achieve compliance under the

Administrative Procedure Act and equitably through a writ of mandamus. The Coast Guard's

non-compliance with the First Circuit's remand order harms AWO.

## Jurisdiction and Venue

5.      The court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1331 (federal

question), 28 U.S.C. § 1361 (jurisdiction for actions in the nature of mandamus), 28 U.S.C. §

1651(a) (All Writs Act), 28 U.S.C. §§ 2201-2202 (declaratory judgment), and the Administrative

Procedure Act, 5 U.S.C. § 701, *et seq.*

6.      AWO requests that this Court grant immediate relief in the form of a mandatory

injunction, writ of mandamus, or other order, compelling the Coast Guard to comply with the

remand directives of the First Circuit and the District Court. *See Coal. for Buzzards Bay*, 644

F.3d 26; Order of Remand, Stay & Admin. Closing, Aug. 19, 2011, ECF No. 187, *United States

v. Massachusetts*, Civ. A. No. 1:05-cv-10112-DPW (D. Mass.).

7.      Venue is proper in the United States District Court for the District of

Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) & (e)(1)(B), in that a substantial part of the

events or omissions giving rise to the claim occurred in this judicial district.

## Parties

8.      Plaintiff AWO is the national trade association of the U.S. tugboat, towboat, and

barge industry. Members of AWO include owners or operators of tugboats and tank vessels that

operate in the waters of Massachusetts and are, therefore, subject to the Massachusetts laws at

the center of this and the related cases.

9.      Defendant Coast Guard is a military and maritime service within the United States

Department of Homeland Security, an executive department of the United States, is one of the

five armed forces of the United States, and is an agency of the United States. 14 U.S.C. § 1; *see* Homeland Security Act of 2002, Pub. L. No. 107-296 § 101, 116 Stat. 2135, 2142 (2002).

## Factual Background

### The Commonwealth's Efforts to Regulate Tugboats and Tank Vessels

10.     In August 2004, the Governor of the Commonwealth of Massachusetts signed into law "An Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," 2004 Mass. Acts ch. 251, *amended by* 2004 Mass. Acts ch. 457 § 1 ("MOSPA"). MOSPA purported to regulate tugboat and tank vessel operations in Massachusetts state waters.

11.     In particular, MOSPA:

A.     Required coastwise vessels carrying oil, hazardous material, or other hazardous waste to "take on and employ" a Massachusetts-licensed pilot when traveling through certain Massachusetts waters;

B.     Established navigation watch requirements for all towed vessels transiting Buzzards Bay and carrying 6,000 or more barrels of oil, manning requirements on any vessel that is towing a tank barge carrying 6,000 or more barrels of oil in Buzzards Bay, and crew requirements for tank barges;

C.     Prohibited vessels not in compliance with federal design standards for double hulls from docking, loading, or unloading in Massachusetts;

D.     Set forth mandatory drug and alcohol testing policies and procedures;

E.     Required all tank barges carrying 6,000 or more barrels of oil to have a tugboat escort when traveling in Massachusetts waters deemed "areas of special interest;"

F.      Mandated that tank vessels follow certain vessel routes through

Massachusetts waters; and

G.      Required all tank vessels traveling in Massachusetts waters to present a

certificate of financial assurance to the Massachusetts Department of Environmental

Protection of at least one billion dollars, which amount could be lowered based on certain

enumerated criteria.

12.      In 2008, following adverse rulings from the District Court (described below, *see*

¶¶ 18-19, *infra*), the Commonwealth purported to require alternative or additional means to

regulate the field of tank vessel operations by enacting "An Act Further Protecting Buzzards

Bay," 2008 Mass. Acts. Ch. 268 (amending Mass. Gen. Laws ch. 21L, § 4, ch. 21M, §§ 1, 8, and

adding ch. 21M, § 9) which went into effect on March 1, 2009 (the "2008 Act").

13.      The 2008 Act created an integrated scheme of notification, pilotage, and tug

escort rules. Under this scheme all tank vessels carrying 6,000 or more barrels of oil in Buzzards

Bay were (1) required to have a tug escort, if not already accompanied, and (2) subject to "triple

the fines" that normally apply in the event of an oil spill if a vessel had (a) "failed to provide [24-

hour] notice" to the state prior to operating in Buzzards Bay; or had (b) "failed to request a state

pilot" to board prior to entering Buzzards Bay. 2008 Mass. Acts. Ch. 268.

14.      The 2008 Act was amended in September of 2009 ("2009 Amendments") by the

General Court of Massachusetts to make both stylistic changes and substantive revisions to the

Act. "An Act Preventing Oil Spills in Buzzards Bay," 2009 Mass. Acts ch. 101 (amending Mass.

Gen. Laws ch. 21L, §§ 1 and 4, ch. 21M, §§ 1 and 9) (forming the "2009 Act").

**Litigation Over MOSPA:**
**The United States' Suit Against the Commonwealth**

15.     On January 18, 2005, the United States filed suit against the Commonwealth in

this Court, seeking to declare invalid and to enjoin permanently enforcement of MOSPA. *United*

*States v. Massachusetts*, Civ. A. No. 1:05-cv-10112-DPW (D. Mass.).

16.     The United States alleged, among other things, that certain provisions of MOSPA

unlawfully assert Commonwealth authority over objects and subject matters of marine safety and

environmental protection committed to the sole authority of the United States, and that such

assertions of state-level authority are expressly forbidden by federal law, conflict with federal

law, or otherwise impede the accomplishment and execution of the full purposes and objectives

of federal law.

17.     AWO is one of three intervenor-plaintiffs in the *United States v. Massachusetts*

litigation.

18.     On July 24, 2006, the District Court granted the United States' and the intervenor-

plaintiffs' motions for judgment on the pleadings, found that the challenged provisions of

MOSPA "are preempted, invalid, and unconstitutional under the Supremacy Clause of the United

States Constitution[,]" and "permanently enjoined" the Commonwealth from enforcing the

challenged provisions of the Act. *United States v. Massachusetts*, 440 F. Supp. 2d 24 (D. Mass.

2006) (Tauro, J.).

19.     Among other things, the District Court held that:

        A.      MOSPA's state pilotage requirements, found in Sections 16 and 17 of

        MOSPA, were preempted by federal law and unconstitutional under the Supremacy

        Clause of the United States Constitution and pursuant to the express preemption language

of 46 U.S.C. § 8501(d) to the extent they required coastwise vessels to take on a Massachusetts licensed pilot.

B.     MOSPA's navigation watch and manning requirements for vessels, crew requirements for tank barges, and tank vessel design requirements, found in Section 11 of MOSPA, were preempted by federal law and unconstitutional under the Supremacy Clause of the United States Constitution pursuant to the preemptive effect of Title II of the Ports and Waterways Safety Act of 1972, as amended by the Port and Tanker Safety Act of 1978 ("PWSA").

C.     MOSPA's mandatory drug and alcohol testing policies and procedures were preempted by federal law and unconstitutional under the Supremacy Clause of the United States Constitution pursuant to the preemptive effect of Title II of the PWSA and 46 U.S.C. § 2303a.

D.     MOSPA's tug escort provisions, which require all tank barges carrying 6,000 or more barrels of oil to have a tugboat escort when traveling in Massachusetts waters deemed areas of special interest, directly conflicted with Coast Guard regulations on the same subject and therefore were preempted by federal law and unconstitutional under the Supremacy Clause of the United States Constitution pursuant to Title I of the PWSA.

E.     MOSPA's mandate that tank vessels follow certain vessel routes through Massachusetts waters directly conflicted with the Coast Guard's determination to make the vessel route discretionary and therefore was preempted by federal law and unconstitutional under the Supremacy Clause of the United States Constitution pursuant to Title I of the PWSA.

F.      MOSPA's exception granting the Massachusetts Department of Environmental Protection the authority to lower, or waive, financial assurance requirements when a vessel meets certain criteria of tank vessel design, operation, equipping, and reporting was unconstitutional to the extent that the imposition of MOSPA's financial assurance provision and the amount of such assurance were conditioned upon criteria preempted by Title II of the PWSA, Title I of the PWSA, or other federal law.

20.     The Commonwealth appealed the District Court's judgment.

21.     The Commonwealth limited its appeal to review of the District Court's invalidation of three of MOSPA's invalidated provisions: the enhanced manning requirement, the tug escort requirement, and the certificate of financial assurance requirement. *U.S. v. Massachusetts*, 493 F.3d 1 (1st Cir. 2007).

22.     On appeal, the First Circuit concluded that further development of the record should be undertaken on whether the Coast Guard had adequately expressed preemptive intent in promulgating the federal regulations alleged by the United States and plaintiff-intervenors to supersede or displace state regulation. The First Circuit vacated the District Court's order as to the three provisions at issue in the Commonwealth's appeal and remanded the issues to the District Court for further record development and argument.

23.     On remand, the District Court once again considered the constitutionality of MOSPA's manning regulations for tank vessels and tugboat escort requirements.

24.     During the pendency of the First Circuit's appellate review, the Coast Guard had further refined the First District Regulated Navigation Area ("RNA"), amending it in various aspects and adding more extensive statements of preemptive intent. *See* Final Rule: Regulated

Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard

District, 72 Fed. Reg. 50,052 (Aug. 30, 2007) ("2007 RNA"). The 2007 RNA expressly stated

that it preempted the MOSPA provisions at issue and established revised tug escort and manning

provisions only with respect to Buzzards Bay.

25.     On March 31, 2010, the District Court again entered judgment in favor of the

United States and plaintiff-intervenors, thereby permanently enjoining (once again) MOSPA's

manning regulations for tank vessels and tugboat escort requirements. *United States v.*

*Massachusetts*, 724 F. Supp. 2d 170 (D. Mass. 2010) (Woodlock, J.) (adopting two reports and

recommendations issued by Magistrate Judge Sorokin).

26.     The District Court found (a) that the Coast Guard's 2007 RNA expressly

preempted the MOSPA provisions at issue and (b) that the MOSPA provisions were conflict-

preempted because they "stand as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress." *Id.* at 183-85.

27.     In particular, the District Court found:

A.     The Coast Guard's decision "not to exercise its authority to require tug

escorts for double hull tank barges and not to impose the manning requirements set out in

MOSPA" was a determination that "no such regulation is appropriate or approved

pursuant to the policy of the statute." *Id.* at 185 (citing *Ray v. Atlantic Richfield Co.,* 435

U.S. 151, 178 (1978)). The Coast Guard balanced the potential added safety benefits of

escorts for double-hulled tank vessels and "concluded that double-hull tankers should

pass through Buzzards Bay free of any legal requirement to obtain a tug escort." *Id.* at

186. Thus, "[a]llowing the Commonwealth to override the Coast Guard's judgment in

such an instance poses an obstacle to the accomplishments of Congress' purposes in enacting the statute." *Id.*

     B.    "The single regulatory scheme governing Buzzards Bay accomplished by the Coast Guard's preemption of the MOSPA provisions promotes the statutory uniformity objective of the PWSA." *Id*. at 186.

28.    The Commonwealth appealed the District Court's judgment again.

**Litigation Over MOSPA:**
**AWO's Separate Action Against the Commonwealth Challenging the 2009 Act**

29.    On April 7, 2010, AWO and other trade associations and organizations representing regulated vessel interests filed an action in the District Court to challenge the 2009 Act as preempted by federal law and invalid under the Supremacy Clause of the United States Constitution, Article VI, Clause 2. *AWO v. Patrick*, Civ. A. No. 1:10-cv-10584-DPW (D. Mass.).

30.    The 2009 Act provides that owners or operators of tank vessels carrying 6,000 or more barrels of oil in Buzzards Bay will be assessed triple the applicable fines in the event of an oil spill if they have not provided 24-hour notice to the Commonwealth prior to operating a vessel in Buzzard's Bay. Mass. Gen. Laws ch. 21L, § 4 and ch. 21M, § 9.

31.    The 2009 Act also extensively regulates towing vessels in the area of state pilotage and tug escorts. Owners and operators of tank vessels carrying 6,000 or more barrels of oil in Buzzards Bay will be assessed triple the applicable fines in the event of an oil spill if they do not request a state pilot to board their tank or towing vessels after providing 24-hour notice under section 9. Mass. Gen. Laws ch. 21L, § 4 and ch. 21M, § 9. The state commissioner will dispatch a "state-provided tugboat escort" for all tank vessels carrying 6,000 or more barrels of oil that are entering or operating in Buzzards Bay unaccompanied by a tug escort. Mass. Gen. Laws ch. 21M, § 9(d). The state-provided tugboat escort will shadow the tank vessel and either a

state pilot or the operator of the state-provided tugboat escort will report to the commissioner any near or actual navigational incidents that could lead to an oil spill, including, inter alia, any deviation from the route appearing on the NOAA chart for Buzzards Bay. Mass. Gen. Laws ch. 21M, § 9(c)-(e).

32.     The regulatory scheme created by the 2009 Act compels compliance with the notice, pilotage, and tug escort provisions by imposing triple daily penalties on owners and operators if any tank vessel fails to comply and an oil spill should occur. Mass. Gen. Laws ch. 21L, § 4(f).

33.     In *AWO v. Patrick*, AWO alleged that the 2009 Act's notice provision, state pilot provisions, and state tug escort requirements, are preempted and void under federal law, and the 2009 Act's triple damages provision is preempted and void on its face and as applied under federal law.

34.     To avoid the risk of incurring extraordinary penalties, members of AWO altered operational behaviors to conform to the 2009 Act, despite its provisions not being required under federal law.

35.     On January 28, 2011, AWO moved for summary judgment in *AWO v. Patrick*. Subsequently, on March 14, 2011, the Commonwealth cross-moved for summary judgment. Both sides fully briefed the motions. The District Court held a hearing on the motions and took the motions under advisement.

## The Commonwealth's Appeal to the First Circuit

36.     The Commonwealth appealed the District Court's second decision invalidating MOSPA to the First Circuit. On appeal, the First Circuit did not reach any of the constitutional issues that were before the District Court. The First Circuit did not review the District Court's

findings and conclusions as to the preemptive effect of the Coast Guard's rulemaking. *See Coal. for Buzzards Bay*, 644 F.3d at 39 ("We take no view of the overarching preemption issue, the applicability vel non of any other extraordinary circumstances exception, the APA issue, or any of the parties' other contentions.").

37.     Instead, the First Circuit considered the issue of the Coast Guard's compliance with NEPA. After concluding that the Coast Guard did not comply with NEPA, the First Circuit ordered vacatur of the District Court's injunction and remand to the Coast Guard for the performance of the Coast Guard's NEPA obligations. *See id.*

38.     The First Circuit's May 17, 2011, directive to the Coast Guard was clear. On remand, the Coast Guard must analyze, and, if necessary, study the environmental impacts of the 2007 RNA as required by NEPA.

> What we have said to this point dictates what must be done. The error here was one of function, not merely of form. The administrative record does not show that the Coast Guard ever analyzed, or even adequately studied, the environmental impact of its proposed action. . . . We need go no further. Where, as here, an agency has failed to satisfy its obligations under NEPA . . ., the appropriate remedy is to remand to the agency for performance of those obligations.

*Id*. at 38-39.

39.     On August 18, 2011, following the entry of the First Circuit's decision, the parties in *United States v. Massachusetts* filed a Joint Status Report with the District Court requesting that the District Court stay and administratively close the case pending the Coast Guard's remand activities. In that report to the District Court, the Coast Guard indicated that it already had initiated action to contract for the required NEPA assessment and analysis.

40.     Also, because the fact patterns and legal arguments in *AWO v. Patrick* substantially overlap with the issues raised in *United States v. Massachusetts*, the parties in *AWO*

*v. Patrick* proposed to the District Court that *AWO v. Patrick* be stayed and administratively closed during the duration of the remand in *United States v. Massachusetts*.

41.     On August 19, 2011, consistent with the First Circuit's directive, and in response to the parties' recommendation for further proceedings in the Joint Status Report, the District Court entered its order remanding the matter to the Coast Guard for further proceedings. Order of Remand, Stay & Admin. Closing, Aug. 19, 2011, ECF No. 187, *United States v. Massachusetts*, Civ. A. No. 1:05-cv-10112-DPW (D. Mass.). The District Court entered a similar order in *AWO v. Patrick*. Order of Stay & Admin. Closing, Aug. 19, 2011, ECF No. 50, *AWO v. Patrick*, Civ. A. No. 1:10-cv-10584-DPW (D. Mass.). The District Court administratively closed the cases without prejudice to a party moving to restore the case(s) to the active docket.

### The Coast Guard's Actions Following Remand

42.     Approximately two years and nine months after entry of the First Circuit remand order, the Coast Guard published its Finding of No Significant Impact ("FONSI") based on the Final Environmental Assessment ("Final EA") for the amendments to the Buzzards Bay Regulated Navigation Area that were implemented in 2007. The Coast Guard prepared the Final EA, dated December 2013, in accordance with NEPA and the Coast Guard's agency procedures for implementing NEPA. *See* 79 Fed. Reg. 10,818 (Feb. 26, 2014).

43.     On February 27, 2014, the United States provided notice to the District Court of the Coast Guard's compliance with the First Circuit's remand based on the actions reflected above in paragraph 42.

44.     On August 5, 2014, the United States moved to reopen *United States v. Massachusetts*, indicating that the Coast Guard's issuance of the FONSI, *see* ¶ 42, *supra*, represented the Coast Guard's completion of the First Circuit's directive to study the

environmental impact of the Coast Guard's regulatory preemption of certain provisions of Massachusetts law purporting to govern oil tanker traffic in Buzzards Bay.

45.     On August 5, 2014, intervenor-plaintiffs in *United States v. Massachusetts*, including AWO, also moved to restore *United States v. Massachusetts* to the active docket and proceed to a disposition on the merits. The plaintiffs in *AWO v. Patrick*, including AWO, filed a similar motion in *AWO v. Patrick*.  Intervenor-plaintiffs made this motion in reliance on the United States' representation that the Coast Guard's issuance of the FONSI represented the Coast Guard's completion of activities necessary to satisfy the requirements of the First Circuit's remand.

46.     The Commonwealth opposed the motions, and on January 15, 2015, this Court held a hearing on the motions.

47.     At the hearing, the United States represented to the District Court that the Coast Guard had completed its activities on remand. When pressed by the District Court regarding the Coast Guard's remand activities, however, the United States agreed to clarify its position as to whether further proceedings on remand were necessary for *United States v. Massachusetts* to be resolved on the merits.

48.     On February 5, 2015, the United States withdrew its motion to reopen *United States v. Massachusetts* to the Court's active docket. Twelve days later, intervenor-plaintiffs also withdrew their motion, pending further action on remand by the Coast Guard.

49.     Ostensibly, the Coast Guard withdrew the motion to reopen so that it could determine whether further regulatory action was required to comply with the First Circuit's remand.

50.     Since that time, however, the Coast Guard has failed to take further action to achieve compliance with the First Circuit's remand order.

51.     Eleven months after withdrawing its motion to reopen, the Coast Guard indicated to AWO that it was still considering what steps it would take to comply with the First Circuit's remand order.

52.     Twelve months after withdrawing its motion to reopen, the Coast Guard's First District Commander informed AWO that the Coast Guard planned to conduct an Environmental Impact Statement ("EIS") on the 2007 RNA for Buzzards Bay.

53.     Seventeen months after withdrawing its motion to reopen, the Coast Guard informed AWO that the Coast Guard was not ready to conduct an EIS on the 2007 RNA.

54.     Two years and three months after withdrawing its motion to reopen, the Coast Guard changed course again and indicated to AWO only that it was considering various courses of action, some of which would affect Buzzards Bay.

55.     Two years and six months after withdrawing its motion to reopen, the Coast Guard informed AWO that it would conduct a Ports and Waterways Safety Assessment ("PAWSA") for Buzzards Bay. The Coast Guard published the PAWSA Report for Buzzards Bay in February 2018.

56.     The PAWSA process is a stakeholder participation risk assessment device that relies on workshops and public fora to identify risk factors and potential mitigation measures for various waterways throughout the United States. It is not conduct contemplated by the First Circuit's remand order.

57.     The Coast Guard has not taken any regulatory action, apart from the FONSI that prompted the Coast Guard and AWO to return to the District Court for resumption of litigation in 2015, *see* ¶ 42, *supra*, in furtherance of the First Circuit's remand directive.

58.     The Coast Guard has not complied with the First Circuit's remand order.

59.     The Coast Guard's inaction harms AWO and its members. Without sufficient and expedient regulatory action by the Coast Guard, AWO is unable to obtain a final order of the District Court confirming the unconstitutionality of Massachusetts laws and regulations currently governing the actions of AWO's members in Massachusetts waters.

## Count I

### Relief Under the Administrative Procedure Act
### To Compel Agency Action Unlawfully Withheld
### Or Unreasonably Delayed, 5 U.S.C. § 706(1)

60.     AWO re-alleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     The Administrative Procedure Act, 5 U.S.C. § 706(1), requires a court to compel agency action that is unlawfully withheld or unreasonably delayed. *See Oxfam America, Inc. v. United States Sec. & Exchange Comm'n*, 126 F. Supp. 3d 168 (D. Mass. 2015).

62.     Agency action is unreasonably delayed when the agency's delay in acting would warrant mandamus relief. *See Oxfam America, Inc.*, 126 F. Supp. 3d at 174. *See also In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Telecommunications Research & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984).

63.     Under federal law, an agency of the United States is legally required to comply with orders entered against it by federal courts. Compliance with a remand order entered by a

federal court is a discrete agency action that is demanded by law. *See In re Core Commc'ns, Inc.*, 531 F.3d at 855.

64.     More than seven years ago, the First Circuit entered an order that "dictate[d] what must be done" by the Coast Guard. *Coal. for Buzzards Bay*, 644 F.3d at 38-39 (1st Cir. 2011). That order, in no uncertain terms, requires the Coast Guard to take actions on remand to "satisfy [the Coast Guard's] obligations under NEPA." *Id.* The District Court remanded the matter to the Coast Guard to conduct proceedings consistent with the First Circuit's directive.

65.     The Coast Guard is required to comply with the First Circuit's remand order and the District Court's order remanding the matter to the Coast Guard for proceedings consistent with the First Circuit remand. The Coast Guard's compliance with the First Circuit's remand order and the order of the District Court is a discrete agency action that is demanded by law.

66.     The Coast Guard has unlawfully withheld the completion of and/or unreasonably delayed in completing the remand proceedings as directed by the First Circuit.

67.     It has been more than seven years since the First Circuit remanded *United States v. Massachusetts* to the District Court with instructions to remand the matter to the Coast Guard.

68.     It has been nearly seven years since the District Court remanded the matter to the Coast Guard and directed the Coast Guard to comply with the First Circuit's remand order.

69.     It has been nearly five years since the Coast Guard issued the FONSI with respect to the 2007 RNA.

70.     It has been almost four years since the United States moved to reopen *United States v. Massachusetts* on the ground that the Coast Guard's issuance of the FONSI with respect to the 2007 RNA represented the Coast Guard's completion of the First Circuit's remand directive. The Coast Guard took the position in its motion to reopen the proceedings that it had

taken all steps necessary to comply with the First Circuit's remand order. *See* Mot. Restore Case

to Active Dkt. & Mem. in Support, Aug. 6, 2014, ECF No. 191, *United States v. Massachusetts*.

At the hearing and through its actions two weeks later in withdrawing its motion, however, the

Coast Guard made clear that it had not fully complied with the First Circuit's remand directive.

71.     The Coast Guard's noncompliance and/or delay in complying with the First

Circuit's remand directive constitutes an unlawful withholding and/or an unreasonable delay of

required agency action under Section 706(1).

72.     The Coast Guard has unlawfully withheld compliance and/or unreasonably

delayed in completing meaningful action to comply with the First Circuit remand for more than

seven years. In so doing, the Coast Guard effectively has nullified the District Court's

determination that the manning requirements and tugboat escort provisions of MOSPA are

preempted by federal law and violate the Supremacy Clause of the United States Constitution.

The Coast Guard's failure to act on the First Circuit and District Court remand orders effectively

insulates the manning requirements and tugboat escort provisions of MOSPA and the challenged

elements of the 2009 Act from constitutional review by the District Court.

73.     AWO and its members have been prejudiced by the Coast Guard's withholding

and/or delay. For seven years, AWO's members have been subject to state statutes and

regulations that have been found by the District Court to be preempted under federal law and

unconstitutional. Absent the Coast Guard's compliance with the First Circuit's remand directive,

AWO is unable to obtain final judgment confirming the unconstitutionality of MOSPA in *United*

*States v. Massachusetts* and also is unable to obtain final judgment on AWO's derivative

constitutional and federal statutory law challenges to the 2009 Act in *AWO v. Patrick*. Absent the

Coast Guard's compliance with the First Circuit's remand directive, AWO's members continue to be subject to the patently unconstitutional MOSPA requirements.

74.    The Coast Guard's noncompliance with the First Circuit's and the District Court's remand orders mean that only injunctive relief pursuant to 5 U.S.C. § 706(1) will be effective in this case.

## Count II

### Relief Under the Mandamus Act and All Writs Act
### For a Writ of Mandamus to Compel Compliance
### With the First Circuit Remand, 28 U.S.C. §§ 1361, 1651(a)

75.    AWO re-alleges and incorporates herein by reference all of the allegations contained in paragraphs 1 through 74 above as if fully set forth herein.

76.    Federal district courts have original jurisdiction over actions to compel a United States agency or an officer or employee thereof to perform a nondiscretionary duty. Federal courts have the authority to issue all writs necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law. *See* 28 U.S.C. §§ 1361, 1651(a).

77.    Federal courts have authority to issue writs of mandamus to prevent the frustration of orders previously issued. *In re Core Commc'ns, Inc.*, 531 F.3d at 856 (quoting *Potomac Elec. Power Co. v. ICC ("PEPCO")*, 702 F.2d 1026, 1032 (D.C. Cir. 1983)).

78.    Under federal law, an agency of the United States has a clear, indisputable, and nondiscretionary duty to comply with orders entered against it by federal courts. An agency has a clear, indisputable, and nondiscretionary duty to comply with a remand order issued by a federal court. *In re Core Commc'ns, Inc.*, 531 F.3d at 855.

79.     As an agency of the United States, the Coast Guard has a clear, indisputable, and nondiscretionary duty to comply with the First Circuit's remand order and the order of the District Court directing the Coast Guard to comply with the First Circuit's remand directive.

80.     The First Circuit's remand order requires the Coast Guard to take actions on remand to "satisfy [the Coast Guard's] obligations under NEPA." *Id.* The District Court's order remands the matter to the Coast Guard to conduct proceedings consistent with the First Circuit's directive. The Coast Guard has a clear, indisputable, and nondiscretionary duty to comply with these orders.

81.     The Coast Guard has not complied with the orders of the First Circuit and the District Court and/or has unreasonably delayed its compliance.

82.     It has been more than seven years since the First Circuit remanded *United States v. Massachusetts* to the District Court with instructions to remand the matter to the Coast Guard.

83.     It has been nearly seven years since the District Court remanded the matter to the Coast Guard and directed the Coast Guard to comply with the First Circuit's remand order.

84.     It has been nearly five years since the Coast Guard issued the FONSI with respect to the 2007 RNA.

85.     It has been almost four years since the United States moved to reopen *United States v. Massachusetts* on the ground that the Coast Guard's issuance of the FONSI with respect to the 2007 RNA represented the Coast Guard's completion of the First Circuit's remand directive. The Coast Guard took the position in its motion to reopen the proceedings that it had taken all steps necessary to comply with the First Circuit's remand order. *See* Mot. Restore Case to Active Dkt. & Mem. in Support, Aug. 6, 2014, ECF No. 191, *United States v. Massachusetts*.

At the hearing and through its actions two weeks later in withdrawing its motion, however, the Coast Guard made clear that it had not fully complied with the First Circuit's remand directive.

86.     By failing to comply and/or unreasonably delaying its compliance with the First Circuit's remand directive and the District Court's remand order, the Coast Guard in effect has nullified the District Court's determination that the manning requirements and tugboat escort provisions of MOSPA are preempted by federal law and violate the Supremacy Clause of the United States Constitution. The Coast Guard's failure to comply with the First Circuit and District Court remand orders in effect insulates the manning requirements and tugboat escort provisions of MOSPA and the challenged elements of the 2009 Act from constitutional review by the District Court.

87.     The Coast Guard's delay in complying and/or failure to comply with the orders of the First Circuit and the District Court is unreasonable and warrants mandamus relief.

88.     AWO and its members have been prejudiced by the Coast Guard's withholding and delay. For seven years, AWO's members have been subject to state statutes and regulations that have been found by the District Court to be preempted under federal law and unconstitutional. Absent the Coast Guard's compliance with the First Circuit's remand directive, AWO is unable to obtain final judgment confirming the unconstitutionality of MOSPA in *United States v. Massachusetts* and also is unable to obtain final judgment on AWO's derivative constitutional and federal statutory law challenges to the 2009 Act in *AWO v. Patrick*. Absent the Coast Guard's compliance with the First Circuit's remand directive, AWO's members continue to be subject to the patently unconstitutional MOSPA requirements.

89.     Absent mandamus, AWO has no adequate remedy.

## Relief Requested

WHEREFORE, Plaintiff American Waterways Operators respectfully prays for the following relief:

1.      A judgment declaring the Coast Guard in violation of the Administrative Procedure Act, the Mandamus Act, and the All Writs Act;

2.      Issuance of an order under Section 706(1) or a writ of mandamus compelling the United States Coast Guard to comply with the remand directives of the First Circuit and the District Court on a definite, fixed, and expedited schedule;

3.      An award of AWO's attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

4.      Such other and further relief this Court deems just and appropriate.

Respectfully Submitted,

AMERICAN WATERWAYS OPERATORS,

By Its Attorneys,

*/s/ George J. Skelly*
George J. Skelly (BBO# 546797)
Ronaldo Rauseo-Ricupero (BBO# 670014)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
617-345-1000
gskelly@nixonpeabody.com
rrauseoricupero@nixonpeabody.com

C. Jonathan Benner (*pro hac vice* requested)
Kathleen E. Kraft (*pro hac vice* requested)
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006
202-585-6900
jbenner@thompsoncoburn.com
kkraft@thompsoncoburn.com

Dated:  October 4, 2018