# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

AMERICAN WATERWAYS          )
OPERATORS,                  )
                            )
     Plaintiff,         )
                            )   Case No. 18-12070-DJC
v.                          )
                            )
UNITED STATES COAST GUARD,  )
                            )
     Defendant.         )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This dispute arises from nearly eight years of inaction and ineffective response by the United States Coast Guard (referred to as "Coast Guard," "Agency," or "Defendant"), to remand orders of the United States Court of Appeals for the First Circuit (the "Court of Appeals") and this Court.

Plaintiff American Waterways Operators ("AWO") is an association whose members are vessel operators subject to federal marine safety and environmental protection regulations promulgated and administered by the Coast Guard.[1] Statement of Facts ("SOF") ¶¶ 1-2. Since the 2004 enactment by the Commonwealth of Massachusetts ("Massachusetts" or "the Commonwealth") of statutes and regulations that diverge from the requirements of federal law, AWO and other maritime organizations have sought and received injunctive protection from this

---

[1] The current federal regulations that govern AWO members' operations in Massachusetts waters are found in 33 C.F.R. § 165.100, *et seq*. These regulations (referred to as a "Regulated Navigation Area" or "RNA") are tailored to local conditions in the Coast Guard's First District, an administrative subdivision that includes Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, and parts of New York and New Jersey. *See* 33 C.F.R. § 3.05-1.

Court against the imposition of unlawful State requirements that purport to supersede or augment federal regulation of interstate and foreign maritime commerce. SOF ¶¶ 10-29.

In 2006 and 2010 this Court upheld AWO's constitutional arguments and enjoined the application and enforcement of the Massachusetts statute and regulations.[2] In each case, the Commonwealth and its allied intervenors sought appellate review by the Court of Appeals. SOF ¶¶ 15-22. In 2011, the Court of Appeals, without reaching the constitutional merits of the matter, vacated an injunction against enforcement of Massachusetts requirements and remanded the case because the Coast Guard "failed to satisfy its obligations under NEPA [the National Environmental Policy Act]." SOF ¶¶ 22-26. The Court of Appeals specifically found that the Coast Guard had erred in relying on agency categorical exclusions from NEPA's requirement for the preparation of either an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA"). *United States et al. v. Coalition for Buzzards Bay et al.*, 644 F.3d 26, 32-33, 35-36 (1st Cir. 2011). The Court of Appeals expressly stated that it ". . . take[s] no view of the overarching preemption issue. . . ." (*Id.* at 37) and that it was not deciding whether the Coast Guard ". . . should have prepared and EIS or EA. <u>What is apparent is that some further level of analysis was required</u>." *Id.*, n. 7 (emphasis added).[3]

Following the Court of Appeals remand to this Court, Judge Woodlock, in August 2011, remanded the matter to the Coast Guard for further action. The remand order administratively closed both the original constitutional challenge filed by the United States in 2005, and the

---

[2] The Massachusetts District Court decisions that were appealed to the First Circuit are *United States v. Massachusetts*, 440 F. Supp.2d 24 (D. Mass. 2006); ; *United States v. Massachusetts*, 724 F.Supp.2d 170 (D. Mass. 2010).

[3] "Accordingly, we reverse the entry of summary judgment, vacate the injunction, and return the case to the district court with instructions to remand it to the Coast Guard for further proceedings consistent with this opinion." 644 F.3d at 38.

companion case brought by AWO and other industry groups in 2010 challenging subsequent modifications to the Commonwealth's statutory and regulatory provisions governing vessel operations. *American Waterways Operators et al. v. Patrick*, Civ. A. No. 1:10-cv-10584-DPW; SOF ¶¶ 27, 29-31. Both cases are deemed administratively closed without prejudice to a party moving to restore the case or cases to the Court's active docket. *Id.*

The record of Coast Guard actions (and inaction) since August 2011 shows periods of glacial progress toward compliance with the remand orders, followed by indecision, false starts, and extended periods of administrative dormancy. SOF ¶¶ 32-49, 55-71, 74-76. The harm incurred by Plaintiff during this period of inaction is that member vessel operators remain subject to a local regulatory regime that (1) departs from the applicable federal standard; (2) imposes additional costs; and (3) has been found on three separate occasions by this Court (in decisions from then-Magistrate Judge Sorokin in a recommended decision, Judge Woodlock, and Judge Tauro) to be incompatible with the federal structure imposed by the Constitution of the United States. The Coast Guard's failure over a span of nearly eight years to comply with the Court of Appeals' directive to cure the NEPA defects in its regulations renders impossible any effort by Plaintiff to vindicate constitutional principles of fundamental importance to the lawful functions of the federal government. AWO here seeks a finding that Coast Guard action in response to the outstanding remand orders has been unlawfully withheld and/or unreasonably delayed in violation of the Administrative Procedure Act, 5 U.S.C. § 706, and seeks the entry of an order or writ mandating prompt compliance with those earlier remand orders.

## II.    STATEMENT OF APPLICABLE LAW

Summary judgment is the "proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard

of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F.Supp.2d 42, 52 (D.D.C. 2010) (citing *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007) (additional internal citation omitted)). Rather than the usual summary judgment standard, however, courts are not generally called upon to resolve factual disputes in reviewing agency action. *Occidental Eng'g Co. v. Immigration and Naturalization Serv.*, 753 F.2d 766, 769–70 (9th Cir.1985). Instead, a court's function is to determine whether, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 723 F. Supp. 2d 1247, 1256 (E.D. Cal. 2010); *see Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (in an APA case, "the district judge sits as an appellate tribunal").

The Administrative Procedure Act, 5 U.S.C. § 706(1) ("APA"), requires a court to compel agency action that is unlawfully withheld or unreasonably delayed. *See Oxfam Am., Inc. v. United States Sec. & Exchange Comm'n*, 126 F. Supp. 3d 168, 175-76 (D. Mass. 2015); s*ee also*, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Telecommc'ns Research & Action Ctr. v. Fed'l Commc'ns Comm'n* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984). To decide whether agency action should be compelled under this statutory authority, courts "must balance the importance of the subject matter being regulated with the regulating agency's need to discharge all of its statutory responsibilities under a reasonable timetable." *Prometheus Radio Project v. Fed'l Commc'ns Comm'n*, 824 F.3d 33, 39 (3d Cir. 2016). "[A] reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers and Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). It can be, "occasionally a year or two, but not several years or a decade." *Id.* (citing *Midwest Gas Users Ass'n v. Fed'l Energy Reg'y Comm'n*, 341, 359 (D.C. Cir. 1987).

Courts can compel agency action unlawfully withheld or unreasonably delayed by a writ of mandamus. *TRAC*, 750 F.2d. at 76-77 ("[S]ection 706(1) and section 555(b) [of the APA] does indicate a congressional view that agencies should act within reasonable time frames and that courts . . . may play an important role in compelling agency action."). Courts routinely recognize that mandamus is an "extraordinary remedy," but nonetheless issue mandamus writs to prompt agency action when an agency has not acted within a reasonable time. *See, e.g.*, *TRAC*, *supra*; *Prometheus Radio*, *supra*; *In re A Community Voice*, 878 F.3d 779 (9th Cir. 2017); *In re People's Mojahedin Org. of Iran*, 680 F.3d 832 (D.C. Cir. 2012); *Radio-Television News Directors Ass'n v. Fed'l Commc'ns Comm'n*, 229 F.3d 269 (D.C. Cir. 2000); *Forest Guardians v. Babbitt*, 164 F.3d 1261 (10th Cir. 1998); *Potomac Elec. Power Co. v. Interstate Commerce Comm'n*, 702 F. 2d 102 (D.C. Cir. 1983). "The primary purpose of the writ [of mandamus] in circumstances like these is to ensure that an agency does not thwart the court's jurisdiction by withholding a reviewable decision." *American Rivers*, 372 F.3d at 419.

NEPA requires agencies to prepare an Environmental Impact Statement for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Implementing regulations for NEPA provide that an agency "shall prepare an EA to determine whether a proposed federal action will have a significant impact and to determine whether preparation of an EIS will be necessary." *Native Ecosystems Council v. United States Forest Serv.*, 428 F.3d 1233, 1238-39 (9th Cir. 2005); 40 C.F.R. § 1508.9 (2000). "An EA is a 'concise public document' that 'include[s] brief discussions of the need for the proposal, of alternatives as required by [42 U.S.C. § 4332(2)(E)], of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.'" *Id.*; 40 C.F.R. §§ 1508.9(a), (b) (2000). If the agency concludes in the EA that there is no significant effect

from the proposed project, the federal agency may issue a finding of no significant impact ("FONSI") in lieu of preparing an EIS. 40 C.F.R. § 1508.9(a)(1) (2000); *id.* at § 1508.13 ("'Finding of no significant impact' means a document . . . briefly presenting the reasons why an action . . . will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared.").

## III.   ARGUMENT

### A.   The Coast Guard has Unlawfully Withheld or Unreasonably Delayed Agency Action on Remand

As recounted in the accompanying Statement of Facts, the Administrative Record reveals a hesitant, halting response to remand instructions from late 2011 to early 2015, followed by virtually no activity since early 2015. SOF ¶¶ 30-50, 53-65, 70-76. The Coast Guard's lack of attention to a court order issued eight years ago should not be allowed to continue indefinitely. To the extent one can discern any structure or purpose to the Coast Guard's conduct over the past eight years, it seems that more than two years following the Court of Appeals' decision were invested in preparing a compliant Environmental Assessment. SOF ¶¶ 32-49. However, after moving to reopen the proceeding in late 2014, the Coast Guard apparently lost confidence in its approach. SOF ¶¶ 47-55. In early 2015, the Agency withdrew its request to reopen and retreated into a four-year period of little or no activity directly responsive to the Circuit Court's conclusion that further NEPA analysis need be conducted. SOF ¶ 55-65, 70-76. Plaintiff therefore asks the Court to issue a writ of mandamus requiring the Agency to comply with the remand order and to set a schedule for reopening the litigation on the merits. Any other result guts the Court's ability to enforce its own orders, and requires Plaintiff to indefinitely continue complying with state laws that previously have been deemed preempted by federal requirements.

**1.     The Coast Guard Advanced its NEPA Analysis in 2013-2014, but has Made Little or no Progress Since Towards Reopening the Litigation on the Merits; this Court Should Not Allow the Agency to Disregard the First Circuit's Remand Order**

"There is, of course, no doubt that the [agency] has a 'clear duty' to respond" to a court's remand order. *Core Commc'ns*, 531 F.3d at 855. The Coast Guard has unambiguously taken the position that "the Coast Guard is under no court order to complete a rulemaking or an analysis under the National Environmental Policy Act ("NEPA") by a date certain." SOF ¶ 76. The Agency claims "there is no current controversy between the Coast Guard and Massachusetts" and the Agency "intends to complete a new rulemaking for Buzzards Bay and has gathered information … which can be used for the development of a new rule." *Id.* The Agency appears to contend that, because the First Circuit's remand order did not provide a "date certain" for the completion of the Agency's NEPA analysis, this Court cannot require the Agency to comply with the remand order. *See id.*

Eight years out from the remand, the "date certain" aspect of the Agency's excuse is of no import. *Id.* Plaintiff asks only that the Agency take action within a reasonable time—a time long ago expired. Eight years of failing to take compliant action does not constitute a reasonable time under the APA. *See, e.g.*, *Community Voice*, 878 F.3d at 786-87 (finding an eight-year delay without any "concrete timeline" to be unreasonable); *American Rivers*, 372 F.3d at 418-420 (D.C. Cir. 2004) (finding a six-year delay unreasonable, despite absence of statutory deadline); *Oxfam Am.*, 126 F.Supp.3d at 174-76 (compelling agency action after three-year delay following expiration of statutory deadline).

The Agency's position that it can indefinitely postpone responsive action is not supported in law. The remand order, issued in 2011, required the Agency to analyze the "environmental impact of its proposed action," which the Court found it had never adequately addressed.

"Where, as here, an agency has failed to satisfy its obligations under NEPA . . ., the appropriate remedy is to remand to the agency for performance of those obligations." *See United States v. Coal. for Buzzards Bay*, 644 F.3d 26, 38-39 (1st Cir. 2011). That remand order is still pending and, as shown in the AR, the Coast Guard has taken no meaningful action to fulfill that remand order since late 2014. SOF ¶¶ 49-51, 55-65, 70-71, 73-76. In the years since then, Plaintiff has repeatedly encouraged the Coast Guard to finalize its NEPA analysis and reopen the litigation, but it has failed to do so or, indeed, to even take steps to revise or finalize the NEPA analysis undertaken in the 2012-2014 period. *See* SOF ¶¶ 58-68, 70-71, 74-76.

The remand order required a "'hard look' at environmental consequences" that might stem from the Coast Guard's explicit preemption of MOSPA in the 2007 regulation. *See U.S. v. Coal. for Buzzards Bay*, 644 F.3d at 31. In response to the remand, the Coast Guard began a NEPA analysis, issuing a Notice for an Environmental Assessment ("EA") in August 2012. SOF ¶¶ 32-42. Within that Draft EA, the Agency concluded that the best option was to require an escort tug for single hull barges carrying more than 5,000 barrels of oil or hazardous materials, an independent pilot, and use of VMRS. SOF ¶¶ 34-36. In addition to the NEPA analysis, the Agency also commissioned the "Buzzards Bay Risk Assessment," which was peer-reviewed, and held a "Conditional Escort Tug Workgroup Meeting" related to the RNA rulemaking on August 14, 2013. SOF ¶¶ 37-41. These documents demonstrate that, as of August 2013, the Coast Guard at least had begun to address the remand requirement for a NEPA analysis, and had commissioned a separate peer-reviewed risk assessment, as well as consulting local interests in the affected area. SOF ¶¶ 32-41. Initially, the Coast Guard concluded that these steps complied with the Court's mandate for NEPA review, and supported the 2014 request to reopen the proceedings on the merits. SOF ¶¶ 47-51

Between 2013 and the filing of this litigation, however, the record shows that the Agency did little to advance its compliance with the Court's remand. Indeed, the only documents in the AR between August 2013 and the PAWSA announcement in December 2017 are letters from Massachusetts' Members of Congress, a Massachusetts state representative, and the Agency's responses to Plaintiff's entreaties seeking to move the litigation toward conclusion. SOF ¶¶ 53-67. The Agency has not offered any justification for this complete lack of action on the First Circuit's remand order for over four years. After the hearing with this Court in January 2015, the record reveals no Agency action directly addressing the First Circuit's remand. SOF ¶¶ 51-71.

The Coast Guard's apparent paralysis has resulted in seemingly indefinite delay in continuing litigation on the merits. In *In re Core Communications*, the D.C. Circuit, responding to a six-year delay in answering the Court's remand order, issued a writ of mandamus to require agency action. By ignoring the Court's remand, "the agency has effectively nullified our determination that its interim rules are invalid, because our remand without vacatur left those rules in place." 531 F.3d at 856. The Court found that the agency's inaction effectively "insulates its nullification of our decision from further review." *Id.* The circumstances in *Core* provide a nearly exact match for the facts of this case, with one exception—in the present case, the Coast Guard has failed to respond to the First Circuit's remand order for *eight years*, rather than six.

When faced with the present litigation seeking Agency action, the Coast Guard has attempted to justify continued delay of its response to the Court's remand order. The Coast Guard does not argue that it is still completing its NEPA analysis. Rather, the Coast Guard states that it contemplates a new rulemaking exercise governing tank vessel operations in Buzzards Bay, but is under "no legal obligation to complete that process by a date certain." SOF ¶ 76. The plain language of the APA and decisions interpreting it disagree. The agency "cannot evade our

remand merely by keeping the . . . review open indefinitely." *Prometheus Radio*, 824 F. 3d at 49.

Even in an area of law where courts regularly defer to the executive branch, such as foreign

affairs, courts do not tolerate an agency ignoring their orders. "[The Secretary] is failing to meet

our remand mandate. And, here too, the delay has the effect of nullifying our decision while at

the same time preventing [Plaintiff] from seeking judicial review. . . . We have been given no

sufficient reason why the Secretary, in the last 600 days, has not been able to make a decision

which the Congress gave her only 180 days to make. If the Secretary wishes to maintain [the

status quo], she can do so by simply denying [Plaintiff's] petition." *People's Mojahedin Org.*,

680 F.3d at 838.

Here, Plaintiff's members are being forced to comply with a state law that has twice been

found to be preempted by the Coast Guard's authority, simply because the Agency has avoided

complying with the First Circuit's remand order. Plaintiff's members should not be subjected to

the continuing burden of compliance with an unconstitutional regime merely because the Agency

refuses to act. *See Radio-Television News Directors Ass'n v. Fed'l Commc'ns Comm'n*, 184 F.3d

872 (D.C. Cir. 1999); *aff'd on remand*, 229 F.3d 269 (D.C. Cir. 2000) (finding the requirement to

comply with rules that arbitrarily chill freedom of the press could not stand without proper

agency justification, on which the agency was delaying).

### 2.     The *TRAC* Factors Demonstrate that the Coast Guard has Unlawfully Withheld or Unreasonably Delayed Agency Action

The Coast Guard's duty to act in a reasonable time can be evaluated under the "*TRAC*

Factors," six factors promulgated by the D.C. Circuit for evaluating whether an agency has

unduly delayed or unlawfully withheld action. *TRAC*, 750 F.2d at 79-80. Though promulgated by

the D.C. Circuit, these rules have been followed by other Circuit Courts in cases involving

unreasonable agency delay. *See, e.g.*, *Community Voice*, 878 F.3d 779 (9th Cir. 2017);

*Prometheus Radio Project v. Fed'l Commc'ns Comm'n*, 824 F.3d 33 (3d Cir. 2016); *Forest Guardians v. Babbitt*, 164 F.3d 1261 (10th Cir. 1998). The factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (internal citations omitted). The *TRAC* factors, therefore, are fact-specific and assist the Court in determining "whether the agency's delay is so egregious as to warrant mandamus." *Id.* at 79. Based on the record in this case, each of the above factors weighs in favor of granting Plaintiff's mandamus request.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). Relevant case law predictably and unavoidably has deemed an eight-year delay to be unreasonable. *E.g.*, *Community Voice*, 878 F.3d at 786-87 (finding an eight-year delay without any "concrete timeline" to be unreasonable delay); *American Rivers*, 372 F.3d at 418-420 (D.C. Cir. 2004) (finding a six-year delay unreasonable, despite absence of statutory deadline); *Oxfam Am., Inc. v. United States Securities and Exchange Comm'n*, 126 F.Supp.3d 168, 174-76 (D. Mass. 2015) (compelling agency action after three-year delay following expiration of statutory deadline). In fact, many cases find a much shorter delay to be unreasonable, even where these is not a statutory deadline. *E.g.*, *Am. Acad. of Pediatrics v. Food & Drug Admin.*, 330 F.Supp.3d 657 (D. Mass. 2018) (finding five-year delay in responding to Court's remand order to be unreasonable); *Core Commc'ns*, 531 F.3d at 857

(holding seven-year delay in responding to remand requiring legal basis for rules to be unacceptable); *TRAC*, 750 F.2d at 80-81 (finding "almost five years [delay] on the rate of return inquiry" constituted unreasonable delay); *Potomac Elec.*, 702 F.2d at 1033-35 (holding that a six-year delay in agency action merited mandamus).

The Coast Guard advanced slowly to the point, in 2014, that it represented to the Court that it had responded to the remand order. SOF ¶ 32-49. In the January 2015 hearing before this Court, the Agency stated that the process was complete and that the litigation should be reopened. SOF ¶ 51-52. The Agency then appeared to reconsider this position in the face of Judge Woodlock's comment that "there are consequences" if the Government said it was ready to go forward. SOF ¶ 52. Judge Woodlock also stated "I think I have made clear to the plaintiff here what the potential consequences are … after 10 years of trying, if the United States has not gotten it right now, that the case should continue but should be rendered as a final judgment." SOF ¶ 52. Finally, he said that parties appeared not to understand "the practical reality of what this litigation would mean and what the resurrection of this litigation at this time would mean . . . If the Government is prepared to say it has done everything that is consistent with the opinion of the First Circuit, then I suppose it can come back. I would think long and hard about it, if I were in the position of the United States." *Id.* While the transcript does not reveal precisely which issues or consequences were of concern to Judge Woodlock, the parties understood from his words and demeanor that the Court did not wish to proceed absent a strong commitment from the Coast Guard that it had complied with the Court of Appeals' instruction to complete its NEPA analysis. Following these warnings, the Coast Guard requested additional time to consider its response to the Judge's question of whether the Agency would undertake further action before the case could be resolved on the merits. SOF ¶¶ 52. While the Agency made no precise

commitment about how much additional time would be required, the practical effect of the Coast

Guard response is that the parties are now more than four years beyond the 2015 hearing with no

revisions to the 2014 NEPA analysis in view.

The delays in this case create a mixture of economic, environmental, and political

concerns raised by the conflicting regulations, in other words, the third and fifth *TRAC* factors.

The Agency's own analysis cites environmental risks caused by MOSPA's dictation of

prescribed routes for ships carrying oil. Prescribed routes do not permit pilots to adjust for

unexpected water or weather conditions or unexpected hazards beneath the water. SOF ¶ 44. The

Commonwealth's enforcement of these prescribed routes potentially rendered Buzzards Bay less

safe from spills than it might be if the Coast Guard's rule, which does not prescribe specific

routes, were in place. *See* SOF ¶¶ 44-46. The Agency's NEPA analysis found that MOSPA's

limiting of restrictions to only oil, rather than oil and other hazardous materials, posed a threat

that the lack of precautions for ships carrying hazardous materials other than oil may lead to a

spill of other chemicals or dangerous substances in Buzzards Bay. SOF ¶¶ 45-46; *see* Oil

Pollution Act, 33 U.S.C. § 2701(34) (defining "tank vessel" to include vessels that carry "oil or

hazardous material in bulk as cargo or cargo residue."). The Coast Guard's failure to finalize its

NEPA analysis and enforce its rule, which is broader than MOSPA, continues this risk to human

health and welfare, as well as to the economic and recreational uses of Buzzards Bay. SOF ¶¶

44-46. Where there is a "nexus between human welfare and 'economic' considerations," this

factor "weighs in favor of compelling agency action based on unreasonable delay." *Muwekma*

*Tribe v. Babbitt*, 133 F.Supp.2d 30, 39 (D.C. Cir. 2000).

The Coast Guard's continuing absence of a response to the remand order threatens the

Court's authority, nullifying its orders and preventing further judicial review. *People's*

*Mojahedin Org.*, 680 F.3d at 838; *Core Commc'ns*, 531 F.3d at 856 (by refusing to act, "the agency has effectively nullified our determination that its interim rules are invalid, because our remand without vacatur left those rules in place."). Similar to *Core*, in this case the First Circuit's remand order did not vacate the Agency's underlying safety and environmental rules, but required action by the Coast Guard to provide additional process, i.e., a more thorough NEPA analysis for those rules. *See Core Commc'ns*, 531 F.3d at 856-57. Instead of acting, the Agency appears to argue that because the Coast Guard may wish to revise the rule in the future, the Agency's possible future actions obviate the need for remand compliance. SOF ¶ 59-67, 70-72, 74-76. By this standard, the federal regulations may never be complete, as federal marine safety and environmental regulations, particularly those of regional or local applicability, such as the 2007 RNA, are quite routinely subject to review and revision. "If a plan became unenforceable every time . . . a revision became a possibility, the entire enforcement procedure of the Clean Air Act would be crippled." *Ohio Envtl. Council v. United States Dist. Court,* 565 F.2d 393, 398 (6th Cir.1977). The Coast Guard's inaction on this remand order demonstrates the Agency's avoidance of an order from the judicial branch, which creates a significant constitutional concern that this Court can remedy with a writ of mandamus.

The Agency's failure to permit closure of litigation challenging the constitutional validity of state legislation is a further abdication of the Coast Guard's constitutional role as a federal actor charged by Congress with substantial preemptive responsibilities over marine safety and environmental protection in the interstate and foreign commerce of the United States. The Coast Guard is a statutory Agency with responsibility for "marine safety . . ., aids to navigation, living marine resources, [and] marine environmental protection," as well as statutory authority to set regulations "addressing the 'design, construction, alteration, repair, maintenance, operation,

equipping, personnel qualification, and manning of vessels . . . that may be necessary for increased protection against hazards to life and property, for navigation and vessel safety, and for enhanced protection of the marine environment." *United States v. Locke*, 529 U.S. 89, 101 (2000) (citing 46 U.S.C. § 3703 (1983)); Ports and Waterways Safety Act of 1972, 33 U.S.C. §§ 1331-33 (repealed 1978), as amended by Port and Tanker Safety Act of 1978, 46 U.S.C. § 3703. The Coast Guard's statutory responsibilities cover all or many of the same subjects and concerns that the Commonwealth seeks to address in MOSPA. *Id.* Because the national government has created a "comprehensive federal regulatory scheme governing oil tankers," Massachusetts' ability to regulate the same vehicles poses a threat to the Coast Guard's uniform regulations, which Congress expressed as a specific purpose for passing the Tank Vessel Act, the PWSA, and the Port and Tanker Safety Act of 1978. *U.S. v. Locke*, 529 U.S. at 89, 100-101. The two previous decisions in this Court support that interpretation, and neither of the First Circuit's decisions in the previous appeals has reversed the District Court's preemption analyses.[4]

The fourth *TRAC* factor requires the Court to consider how expediting agency action may affect other agency activities "of a higher or competing priority." Although the Coast Guard has other missions, obligations, or activities that compete with reopening the litigation against Massachusetts, this does not justify indefinite inaction by the Agency. Indeed, courts routinely issue mandamus writs despite an agency's claims that raising one action to the top of a priority list does nothing to advance the agency's overall mission. *Prometheus Radio*, 824 F.3d at 49; *People's Mojahedin Org.*, 680 F.3d at 835-37; *Muwekma Tribe*, 133 F.Supp.2d at 40-41; *Forest*

---

[4] The first appellate review sought a more detailed explanation of the Coast Guard's preemptive intent. 493 F.3d 1, 19, 22-25 (1st Cir. 2007). The Coast Guard provided that additional statement in a timely manner when it published the revised RNA that was the foundation of the 2010 decision invalidating the State's regulations. SOF ¶¶ 18-19; *see* 69 Fed. Reg. 62,427 (Oct. 26, 2004); 72 Fed. Reg. 50,052 (Aug. 30, 2007).

*Guardians*, 164 F.3d at 1268-1270, 1273-74; *Potomac Elec.*, 802 F.2d at 1035; *see Community In-Power and Dev. Ass'n, Inc. v. Pruitt*, 304 F.Supp.3d 212, 222-24 (D.D.C. 2018); *Radio-Television News*, 229 F.3d at 271-72; *Public Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34-36 (D.C. Cir. 1984). The record in this case does not support that argument. While the Coast Guard may argue that reopening this litigation will compete with its current ambitions to revise the underlying 2007 regulation, that argument supports neither past nor prospective delay. *See People's Mojahedin Org.*, 680 F.3d at 835-37 (finding that the Secretary's balancing of "nearly constant emergencies" does not alter the obligation to comply with court remand order). The record and the Coast Guard's statements at the January 2015 hearing demonstrate that the Agency at one point had confidence that its 2014 NEPA analysis was remand compliant. SOF ¶¶47-51. After requesting additional time to respond to Judge Woodlock in 2015, the Agency has made no further efforts to fortify or update that analysis. SOF ¶¶ 50-71, 74-75. The absence of such actions indicate that the Agency simply walked away from additional effort to improve on its 2014 work. Walking away in the face of a clear duty to comply with the First Circuit's remand order "signals the breakdown of regulatory processes." *American Rivers*, 372 F.3d at 418. The record in the present case demonstrates just such a breakdown, and a decided lack of diligence. The record index alone reflects a void in Agency action from late 2014 until the Coast Guard announced a Ports and Waterways Safety Assessment ("PAWSA") for a new rule-making in 2017. SOF ¶¶ 47-49, 55-68. The PAWSA relates to a new, discretionary rulemaking action that does not relate to the NEPA analysis required by the First Circuit. SOF ¶¶ 68-75. The initiation of the PAWSA is not responsive to the remand order. SOF ¶¶ 69-70. Given the continuing pressure from Plaintiff on the Coast Guard to fulfill its remand obligations in the 2015-2017 period, SOF ¶¶ 58-72, the PAWSA initiative

bears earmarks of a deflection or pretextual effort to defuse continuing criticism of Agency delay.

The sixth *TRAC* factor states that the Court does not need to find bad faith or other impropriety in the Agency's actions in order to compel Agency action. *TRAC*, 750 F.2d at 80. Even where the record does not "disclose a hint of impropriety," the Court can find that other factors support mandamus relief. *Muwekma Tribe*, 133 F.Supp.2d at 41. In the present case, Plaintiff does not find it necessary to allege that the Agency has acted in bad faith or with any other impropriety beyond its unwillingness to behave in accordance with the First Circuit's remand order. The Agency's delay of eight years, with roughly five years of no action directly responsive to NEPA analysis of the existing rule, demonstrates action unlawfully withheld or unreasonably delayed, regardless of the Agency's intentions. Nor does the Coast Guard claim that it will soon conclude its NEPA analysis and move to reopen the litigation. SOF ¶¶ 65-75. In fact, the Agency appears to believe it is under no duty to comply with the First Circuit's remand order, other than through evolutionary processes that may, at some future date, create new constitutional issues to be litigated on their own distinct merits. *See* SOF ¶ 76. Plaintiff needs not prove (or even allege) bad faith on the part of the Agency; rather, the Agency must act within a reasonable time. Here, the Agency's delayed action on a court order, along with the other *TRAC* factors, suffice to require the Court to compel the Coast Guard to act.

## B.     The Record Suggests that the Coast Guard is Pursuing a New Rule in Lieu of Complying with the Court's Remand Order

Following the hearing before Judge Woodlock on January 15, 2015, the Coast Guard almost immediately received a letter from several members of Massachusetts' congressional delegation, "urg[ing] the Coast Guard not to take legal action against the Commonwealth," and the Agency appears to have deemed inaction to be a way to capitulate to that pressure. SOF ¶¶

53-56. Congressional pressure, however, does not remove the Agency's obligation to comply with the remand order.

The receipt of this communication was followed by a prolonged period of inactivity. SOF ¶¶ 55-67. Internal Coast Guard emails, and emails with AWO illustrate that the Coast Guard was doing nothing to buttress its NEPA analysis. Statements such as, (1) "despite our continuing opinion that MOSPA violates preemption principles, the CG (w/DOJ advice) does not intend to reopen the current litigation," SOF ¶ 64; (2) "the CG is actively considering other options for Buzzards Bay including when to initiate a new RNA, the environmental analysis that would accompany a new rulemaking, and the application of the administration's regulatory reform principles . . . I posited that there is no quick solution to removing the application of MOSPA," *Id.*; and (3) "I tried to convince AWO that a new RNA is related to preemption and that it is more efficient for the CG to pursue potential RNA at this time, rather than pursue old litigation and wait to update RNA," SOF ¶ 70, provide clear statements that the Coast Guard does not wish to act on the Court's remand order. But that is not a decision that the Agency can make. Despite broad discretion, "[t]here is, of course, no doubt that the [agency] has a 'clear duty' to respond" to a court's remand order. *Core Commc'ns*, 531 F.3d at 855. The position that the Agency "is under no duty to act leaves the agency unaccountable" and subverts the intent of the statutory direction granting the agency authority to act. *Community Voice*, 878 F.3d at 786. "[T]he agency may not seek to evade judicial review by constantly beginning new rule-making cycles." *Coal. for Sustainable Res.*, 259 F.3d 1244, 1251 (10th Cir. 2001).

To state it bluntly, the record describes a federal agency that has lost its institutional resolve and focus. *See* SOF ¶¶ 51-56, 58-71, 73-76. Such paralysis is inconsistent with Congress' intention that the Coast Guard should, "enact measures for protecting navigation and the marine

environment" by enacting regulations in the areas of its authority. 33 U.S.C. § 1223(a)(1);

*Wilmina Shipping AS v. United States Dep't of Homeland Sec.*, 934 F.Supp.2d 1, 7-8 (D.D.C.

2013).

The Coast Guard's excuse that "the Commonwealth did not implement its findings," (*i.e.*,

Massachusetts did not implement the findings from the 2013 Risk Assessment), SOF ¶ 59-60,

74, demonstrates precisely why Plaintiff has filed this action, and precisely why the

constitutional invalidity of MOSPA and its regulations should be reaffirmed. Congress intended

that the Coast Guard would administer a uniform set of rules and regulations for navigation in

U.S. coastal waters. Permitting that goal to be subverted by Massachusetts' state law permits any

state unilaterally to alter or self-exempt from federal marine safety and environmental

protections. Such an outcome contravenes the clear intent of Congress, as enforced by several

Supreme Court cases. *Ray v. Atlantic Richfield*, 435 U.S. 151, 165 (1978) ("the Supremacy

Clause dictates that the federal judgment that a vessel is safe to navigate United States waters

prevail over the contrary state judgment."); *United States v. Locke*, 529 U.S. 89, 111 (2000)

(finding that "Congress has left no room for state regulation" of "design, construction, alteration,

repair, maintenance, operation, equipping, personnel qualification, and manning of tanker

vehicles.").

"An agency 'cannot simply refuse to exercise its discretion' to conclude a matter."

*Community Voice*, 878 F.3d at 785. But that is precisely what the Coast Guard has done to date,

by failing to act on the First Circuit's remand order. Instead, the Agency has chosen to acquiesce

indefinitely in the Commonwealth's continuing overlapping regulation of tank vessel operations.

The Agency has taken no meaningful actions to fortify or revise its NEPA analysis or to reopen

constitutional litigation with Massachusetts on the merits. Because the Coast Guard has not

concluded its actions in compliance with the First Circuit's remand order in a reasonable time, this Court should require the Agency to complete its remand compliance activity within a fixed and definite period.

## IV.    CONCLUSION

The Coast Guard's eight-year failure to complete its NEPA review of existing federal regulations subjects Plaintiff's member companies to duplicative regulation that has twice been found to be prohibited by the Constitution of the United States. Until the Coast Guard complies with the remand orders of this Court and the Court of Appeals, Plaintiff cannot obtain certainty about the applicable regulatory regime governing their operations in Massachusetts waters. The aid and intervention of this court is essential to obtaining resolution of this uncertainty.

Dated: April 26, 2019                              AMERICAN WATERWAYS OPERATORS,

By Its Attorneys,

*/s/ C. Jonathan Benner*
C. Jonathan Benner (*pro hac vice*)
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006
202-585-6900
jbenner@thompsoncoburn.com

George J. Skelly (BBO# 546797)
Ronaldo Rauseo-Ricupero (BBO# 670014)
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA 02109-2835

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2019, I electronically filed the foregoing with the United States District Court for the District of Massachusetts using the Court's CM/ECF system. The parties in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Respectfully Submitted,

*/s/ Christine R. Couvillon*
Christine R. Couvillon on behalf of:
C. Jonathan Benner (*pro hac vice*)
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, D.C. 20006
202-585-6900
jbenner@thompsoncoburn.com
ccouvillon@thompsoncoburn.com