UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN WATERWAYS OPERATORS, </br></br>Plaintiff, </br></br>v. </br></br>UNITED STATES COAST GUARD, </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 18-12070-DJC |

**MEMORANDUM OF THE BUZZARDS BAY COALITION IN SUPPORT OF MOTION TO INTERVENE**

The Buzzards Bay Coalition ("the Coalition") should be allowed to intervene as a defendant in this proceeding. As an organization dedicated to the restoration, protection, sustainable use and enjoyment of Buzzards Bay (the "Bay"), and designated as the Volunteer Coordinator in the event of any significant oil spill in the Bay, the Coalition has a unique interest in the outcome of this matter. Moreover, Plaintiff American Waterways Operators ("AWO") seeks in this action to require the United States to take action that it claims was ordered by the First Circuit in *United States, et al. v. Coalition for Buzzards Bay, et al.*, 644 F.3d 26 (1st Cir. 2011). Plainly, since the Coalition was permitted to intervene in that action, it should be permitted to intervene here to protect the rights it secured in the First Circuit.

If permitted to intervene, the Coalition would not seek to significantly delay this litigation. It requests at this stage only a brief period to review and respond to the anticipated opposition of the United States to the pending motion for summary judgement filed by AWO. The Coalition would have preferred to intervene prior to the filing of any summary judgment

motion; however, it was not informed that AWO and the United States agreed to change the schedule set by this Court on February 25, 2019 (ECF # 22) setting a status conference for May 20, 2019.

Since 2005, the Coalition has been a party in litigation attempting to strip the Bay of oil spill prevention measures uniquely tailored to its protection.  The Coalition's ability to protect this interest will be impaired or impeded by the disposition of this action in which AWO is seeking to compel United States Coast Guard action.  Fourteen years ago, AWO commenced its crusade to invalidate the Massachusetts Oil Spill Prevention Act ("MOSPA")—this is merely their latest attempt to do so.  In fact, for more than a decade, the Coalition, together with the Commonwealth of Massachusetts, defended the provisions of MOSPA against the attacks of the combined effort of both AWO and the Coast Guard, making the Coalition's intervention here absolutely critical to ensure its interests are represented and the provisions of MOSPA upheld.

The Coalition seeks to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) because it has an important and unique interest in protecting the waters of the Bay against oil spills and accordingly seeks to defend those provisions which provide such protection for the Bay.  In the alternative, the Coalition seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2) because the Complaint and the pending Summary Judgement motion raise questions of law and fact in common with the main action, and intervention will neither prejudice the existing parties nor unduly delay the adjudication of this action.

## STATEMENT OF FACTS

As explained in the affidavit of Mark Rasmussen ("Rasmussen Aff.") accompanying the Coalition's Motion to Intervene, the Coalition is a nonprofit membership organization dedicated to the restoration, protection, sustainable use and enjoyment of the Bay.  The Coalition was

formed in 1987 and currently has more than 9,500 individual, family, business and organizational members and volunteers, the vast majority of whom use the Bay and its shoreline for a variety of recreational and commercial purposes. The Coalition's work is focused in four main areas: water quality and natural resource monitoring, advocacy, land conservation and community engagement. (Rasmussen Aff. ¶ 4.) In 2001 and again in 2015, the Coalition was officially designated by the Commonwealth of Massachusetts as the official Volunteer Coordinator in the event of a significant oil spill in the Bay. (Rasmussen Aff. ¶ 11.)

The Bay was designated by the United States Congress in 1985 as an "Estuary of National Significance," and was further designated by the United States Environmental Protection Agency as a "No Discharge Area" in 2000. The Bay is also a state-designated Ocean Sanctuary and is home to a variety of threatened and endangered species, including approximately half of the remaining global population of the endangered roseate tern. At 28-miles long, with an average width of only 8 miles and a mean depth of only 36 feet, the Bay poses many risks to navigation. Both ends of the Bay are marked with dangerous ledges, reefs and currents. The Bay consequently has a long history of significant oil spills which have inflicted serious ecological damage on the Bay and its diverse natural resources. (Rasmussen Aff. ¶¶ 4-6.) Nonetheless, an estimated 2 billion gallons of oil is transported through the Bay each year.

The most recent significant oil spill occurred on April 27, 2003, when the Bouchard Barge-120 (the "B-120") grounded in the Bay and released an estimated 98,000 gallons of heavy, viscous No. 6 oil into the waters of the Bay. The B-120 oil fouled approximately 93 miles of the Bay's shoreline, closed public and private beaches, caused the death of nearly 500 protected birds, restricted fishing activities, contaminated thousands of acres of shellfish beds, and

triggered a massive cleanup effort that continued for four years. (Rasmussen Aff. ¶¶ 8-9.) The toxic effects of this single spill are expected to linger for decades.

In the wake of the B-120 oil spill, the Coalition, as the designated Volunteer Coordinator, coordinated the efforts of hundreds of oil spill response volunteers and represented the municipalities adjacent to the Bay in advocating for cleanup of the oil. When the initial, intensive phase of the cleanup was complete, the Coalition set about researching and drafting oil spill prevention laws in order to ensure that a similar environmental disaster would not occur in the Bay in the future. The laws the Coalition drafted became the framework and body of the MOSPA, which was introduced in the state legislature on the one-year anniversary of the B-120 oil spill and signed into law in August 2004. (Rasmussen Aff. ¶¶ 12-13.)

On January 18, 2005, the United States filed a complaint for declaratory and injunctive relief against the Commonwealth of Massachusetts arguing that certain provisions of MOSPA were invalid, null, and void. *United States v. Mass.*, No. 1:05-cv-10112-DPW (D. Mass). On March 8, 2005, AWO, together with two other groups, filed a motion to intervene in the matter. On April 21, 2005, the Coalition was permitted to intervene as a defendant. Since that time, the Coalition has participated fully in that related matter defending MOSPA provisions and the interest of the Bay, including briefing and arguing two dispositive motions in the District Court and successfully appealing to the First Circuit adverse decisions on both of those motions. *United States v. Mass.*, 493 F.3d 1 (1st Cir. 2007); *United States v. Coal. for Buzzards Bay*, 644 F.3d 26 (1st Cir. 2011).

# ARGUMENT

## I.   THE COALITION IS ENTITLED TO INTERVENE AS OF RIGHT

The Coalition may intervene in this action as of right in accordance with Fed. R. Civ. P. 24(a)(2).  The Court of Appeals for the First Circuit has consistently held that a party must meet four requirements in order to intervene pursuant to Fed. R. Civ. P. 24(a)(2).

> First, the application must be timely.  Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action.  Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.  Fourth, the applicant must show that the interest will not be adequately represented by the existing parties.

*Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989).  The Coalition meets all four of these requirements.

### A.  The Coalition's Application is Timely

The Court of Appeals for the First Circuit has identified four factors for evaluating the timeliness of a motion to intervene:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*United States v. Metro. District Comm'n,* 865 F.2d 2, 5 (1st Cir. 1989).  All of these factors favor a finding that the Coalition's Motion to Intervene is timely.

The Complaint in this matter was filed on October 4, 2018.  *ECF # 1.*  Defendant's Answer was filed on December 4, 2018.  *ECF # 8.*  Subsequent to the filing of the Answer, a 31-day federal government shutdown delayed any further action in this matter until February 8, 2019 with the filing of a Joint Local Rule 16.1(D) Statement and Motion for Entry of Scheduling

Order. *ECF #19.* On February 25, 2019, this Court held a status conference, which the Coalition attended as an observer. At that conference the Court set a schedule for AWO to challenge the administrative record and/or seek discovery. The Court then set a status conference for May 20, 2019 to decide any such motions and to set a schedule for summary judgment briefing. Unbeknownst to the Coalition, however, AWO and the United States agreed to modify that schedule to provide for earlier summary judgment briefing, which the Coalition did not learn of until May 1, 2019.

Under the circumstances, the Coalition's motion to intervene is timely and any delay to allow it to weigh in on the summary judgment proceeding will not prejudice any party. After all, the crux of AWO's argument is that the Coast Guard has delayed action for "nearly eight years". *ECF #31-1, at 3*. A further delay of less than a month is of little consequence. Indeed, the United States just filed the record on March 22, 2019. *ECF #25-2.* The prejudice the Coalition would suffer if not allowed to intervene would be significant, in that it would be precluded from protecting its important and unique interest in safeguarding the waters of the Bay against oil spills.

### B. The Coalition Has A Significant Interest Relating To The Core Subject Matter Of This Action.

The Coalition has, since its founding approximately thirty-two years ago, dedicated itself to the restoration, protection, sustainable use and enjoyment of the Bay. Among its more than 9,500 members, the vast majority actively use the Bay and its shoreline for a broad variety of recreational and commercial purposes—including swimming, sunbathing, bird-watching, boating, kayaking, windsurfing, fishing, shellfishing, aquaculture, tourism and education. In addition, a number of the Coalition's members own property along the shoreline or depend upon the Bay for their livelihoods. The Coalition and its members have a significant interest in

sustaining these uses and protecting the Bay's myriad natural resources.  Oil spills, such as the one which occurred in the Bay on April 27, 2003, have the effect of preventing the Coalition and many of its members from using the Bay for many, if not all, of the above described recreational and commercial purposes, and cause direct harm to the natural resources of the Bay.  In addition, the Coalition, as the designated Volunteer Coordinator in the event of a significant oil spill in the Bay, is required to expend its limited resources coordinating volunteers in the event of an oil spill.  Therefore, the Coalition has an important and unique interest in preventing oil spills in the Bay.

In order to protect this interest, the Coalition actively participated in the drafting of MOSPA, defending the provisions of MOSPA as an intervenor in federal district court and on appeal, commenting on rulemakings and participating in two Ports and Waterways Safety Assessments of Buzzards Bay: one in 2003 and the other in 2018.  The stated purpose of MOSPA is to prevent the occurrence of oil spills in order to "protect the unique and sensitive waterways of the commonwealth," including the Bay.  2004 Mass. Acts ch. 251.  MOSPA seeks to accomplish this purpose by, among other things, imposing various vessel safety measures on certain classes of ships which transport oil through the Bay.  MOSPA was enacted in the wake of the B-120 oil spill in order to prevent such disasters from recurring in Massachusetts waters.  Preventing oil spills in the Bay directly benefits the Coalition and its members.  The Coalition accordingly has a significant interest that is directly tied to the subject matter of this action and warrants the Coalition being allowed to intervene as of right.  *See Conservation Law Found. v. Mosbacher,* 966 F.2d 39 (1st Cir. 1992) (holding that fishing groups were entitled to intervene in action brought by environmental groups against regulatory authorities); *see also Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir. 1983) (holding that Audubon Society was entitled

as a matter of right to intervene in an action challenging the legality of a measure which it had supported).

### C. The Coalition's Interests Will Not Be Adequately Represented By Existing Parties.

The Coalition's interests will not be adequately represented by existing parties. For more than a decade, the interests of AWO and the Coast Guard have been aligned against the interests the Coalition has in protecting the Bay from future oil spills. In 2005, AWO intervened on the side of and in support of the Coast Guard in *United States of America, et al. v. Commonwealth of Massachusetts, et al.*, No. 1:05-cv-10112-DPW (D. Mass.), a joint effort of AWO and the Coast Guard to invalidate the provisions of MOSPA. After more than a decade of on-going federal litigation whereby the Coalition and the Coast Guard were on opposite sides of the issue, it cannot now be presumed that the Coast Guard will represent the Coalition's interests in this action.

### D. Disposition Of This Action May Impair Or Impede The Coalition's Ability To Protect Its Interest.

This action is the latest attempt by AWO to strip the Bay of oil spill prevention protections. Should the AWO prevail in this action, the Coalition's interests in sustaining its members' uses of the Bay, protecting the Bay's natural resources and conserving the Coalition's limited resources would be substantially affected. The Bay has enjoyed uninterrupted protection for nearly a decade now. Invalidation of the current regulatory regime would result in heavily oil-laden vessels transiting the Bay without the safety measures necessary to prevent a devastating oil spill. Invalidation of these safety measures would substantially increase the likelihood of another oil spill occurring in the Bay. The Coalition's interests, therefore, may be

impaired or impeded by the disposition of this action, and the Coalition is entitled to intervene as of right pursuant to Rule 24(a). *See Mosbacher*, 966 F.2d at 39.

## II. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION

Even if this Court were to conclude that the Coalition is not entitled to intervene as of right, the Court should still exercise its discretion to grant the Coalition's Motion to Intervene. Under Fed. R. Civ. P. 24(b)(2), the three requirements for permissive intervention are: (1) timely application; (2) a question of law or fact in common between the applicant's claims or defense and the main action; and (3) a determination that the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *See Int'l Paper Co. v. Town of Jay, Maine*, 887 F.2d 338, 346 (1st Cir. 1989).

This motion is timely. The Coalition seeks to defend the current regulatory environment against AWO's relentless attempts to create a more vulnerable Bay. In addition, if the Court allows the Coalition to intervene at this early point in the action, it will not unduly delay the disposition of this case. Intervention has not and will not impede the discovery process, nor will it impede any dispositive motion proceedings.

The Coalition's participation as an intervenor in this case will allow the case to be decided on the basis of a fully developed record and briefing. The Coalition contributed significant work in connection with oil spill prevention measures for the Bay, including more than a decade of successfully defending those measures in federal court. The Coalition's work in drafting and defending MOSPA provides it with a unique understanding of the legal background and the federal statutes cited by AWO. The Coalition possesses an abundance of knowledge related to the matters pending before this Court, and is eager and willing to share this knowledge with the Court in order to assist it in framing the issues of the case.

Additionally, the Coalition has extensive knowledge and expertise with respect to the factual "peculiarities" of the Bay that justify the Bay's protection through the vessel safety measures at the core of MOSPA, and thus provide unique justifications for upholding certain of the challenged provisions as they relate to the Bay.  Such "peculiarities" justify the Commonwealth's efforts to regulate the Bay.  The Coalition therefore will be uniquely able to contribute to the full development of both the factual and legal issues of this case.

Finally, the Coalition should be permitted to intervene based on the arguments advanced by the Commonwealth in its Motion to Intervene and supporting memorandum.

In addition, the Coalition requests that the Court waive Fed. R. Civ. P. 24(c)'s requirement that it serve an answer or other pleading with this motion in light of the current stage of the case and the fact that the Coalition's "position on the subject matter of the litigation is clearly articulated" in its accompanying memorandum of law.  *See Windsor v. United States*, 797 F. Supp. 2d 320, 325-26 (S.D.N.Y. 2011); *see also Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 516 n.7 (1st Cir. 2017) (stating that opposition to pending motions "clearly setting forth [party's] position on the issue for which it sought intervention" was sufficient to comply with Fed. R. Civ. P. Rule 24(c)).  In the alternative, the Coalition requests that the Court allow the Coalition five (5) business days from the date this motion is granted to file an answer.

## CONCLUSION

For the above-stated reasons, the Coalition respectfully requests that its Motion to Intervene be allowed.

THE BUZZARDS BAY COALITION,

By its attorneys,

/s/ *Jonathan M. Ettinger*
Jonathan M. Ettinger (BBO #552136)
Alicia Fay Daniel (BBO #703338)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
jettinger@foleyhoag.com
adaniel@foleyhoag.com

Dated: May 31, 2019

**CERTIFICATE OF SERVICE**

I, Jonathan M. Ettinger, hereby certify that a true and accurate copy of this document, which was filed via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 31, 2019.

/s/ *Jonathan M. Ettinger*
Jonathan M. Ettinger (BBO #552136)
jettinger@foleyhoag.com