**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN WATERWAYS OPERATORS, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> UNITED STATES COAST GUARD, ) <br><br> Defendant. ) | No. 18-cv-12070-DJC |

<u>**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND STATEMENT OF FACTS ...................................................... 2

    A.    Oil Spill Prevention In Buzzards Bay ................................................... 2

    B.    Prior Litigation ......................................................................................... 3

    C.    Post-Litigation Activity ........................................................................... 8

STANDARD OF REVIEW .................................................................................................. 9

ARGUMENT ......................................................................................................................... 10

    A.    AWO Improperly Seeks To Compel Discretionary Agency Action. ................... 10

        1.    Reopening the prior litigation is a discretionary decision not subject to judicial review. ...................................................................... 10

        2.    The Coast Guard is not required to "buttress" the NEPA analysis for its 2007 RNA. ................................................................... 11

        3.    The Coast Guard is neither bound to its old rule, nor required to preempt MOSPA. ......................................................................... 12

    B.    While The Court Need Not Reach The Question Of Unreasonable Delay, The Coast Guard Has Not Unreasonably Delayed. ...................................... 14

    C.    AWO Lacks Standing To Bring This Action. ...................................... 16

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*AARP v. EEOC*,
  823 F.2d 600 (D.C. Cir. 1987) ................................................................. 10

*Am. Chemistry Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) ......................................................... 16, 17, 18

*Am. Trucking Ass'ns v. Atchison, T. & S.F.R. Co.*,
  387 U.S. 397 (1967) ............................................................................. 14

*C.V. v. F.C.C.*,
  130 F.3d 1078 (D.C. Cir. 1997) ............................................................... 13

*City of Dania Beach v. FAA*,
  485 F.3d 1181 (D.C. Cir. 2007) ............................................................... 18

*Dep't of Transp. v. Pub. Citizen*,
  541 U.S. 752 (2004) ............................................................................. 12

*Didrickson v. U.S. Dep't of the Interior*,
  982 F.2d 1332 (9th Cir. 1992) ................................................................. 10

*Fla. Audubon Soc. v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) .................................................................. 18

*Georgetown Univ. Hosp. v. Bowen*,
  821 F.2d 750 (D.C. Cir. 1987) ................................................................. 6

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................... 10, 11

*In re Bluewater Network*,
  234 F.3d 1305 (D.C. Cir. 2000) ................................................................ 9

*In re Core Commc'ns*,
  531 F.3d 849 (D.C. Cir. 2008) ................................................................ 13

*In re Permian Basin Area Rate Cases*,
  390 U.S. 747 (1968) ............................................................................. 14

*Kleppe v. Sierra Club*,
  427 U.S. 390 (1976) ............................................................................. 12

*Kokajko v. F.E.R.C.*,
  837 F.2d 524 (1st Cir. 1988) ............................................................... 15, 16

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ............................................................................. 17

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 16, 17

*Morrison v. U.S. Dep't of Labor*,
   713 F. Supp. 664 (S.D.N.Y. 1989) ........................................................... 10

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004)............................................................ 9, 10, 11, 14, 15

*Safe Streets All. v. Hickenlooper*,
   859 F.3d 865 (10th Cir. 2017) ............................................................... 10

*Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv.*,
   674 F.3d 97 (1st Cir. 2012)................................................................ 9, 11

*Town Of Winthrop v. FAA*,
   535 F.3d 1 (1st Cir. 2008)..................................................................... 18

*United States v. Coal. for Buzzards Bay*,
   644 F.3d 26 (1st Cir. 2011)...................................................... 5, 6, 12, 13

*United States v. Massachusetts*,
   724 F. Supp. 2d 170 (D. Mass. 2010) ...................................................... 5

*United States v. Massachusetts*,
   493 F.3d 1 (1st Cir. 2007) ......................................................... 4, 12, 13

*United States v. Massachusetts*,
   440 F. Supp. 2d 24 (D. Mass. 2006) ........................................................ 3

**Statutes**

42 U.S.C. §§ 4321-4347 ............................................................................ 3

46 U.S.C. § 70001(a)(4), Pub. L. 115–282, title IV, §401(a), 132 Stat. 4253 (2018) ............. 4, 12

Mass. Gen. Laws ch. 21M ......................................................................... 2

Mass. Gen. Laws ch. 21M § 4 ..................................................................... 4

Mass. Gen. Laws ch. 21M § 6 ..................................................................... 3

Mass. Gen. Laws ch. 21 § 42 ...................................................................... 2

Mass. Gen. Laws ch. 21 §§ 50B–50E .............................................................. 2

**Regulations**

33 C.F.R. § 165.100(d)(1).......................................................................... 3

Regulated Navigation Area: Navigable Waters Within the First Coast Guard District, 63 Fed.
   Reg. 71,764 (Dec. 30, 1998) ................................................................. 3

Regulated Navigation Area; Buzzards Bay; Navigable Waterways within the First Coast Guard
   District, 72 Fed. Reg. 50052 (Aug. 30, 2007) .............................................. 4

Advanced Notice of Proposed Rulemaking, 78 Fed. Reg. 40651 (July 8, 2013) .......................... 6

## INTRODUCTION

Plaintiff American Waterways Operators ("AWO") seeks what mandamus cannot provide: an order compelling *discretionary* agency action. Just as the Coast Guard had discretion to bring the prior litigation enforcing the supremacy of federal law, it had discretion to abandon that suit after achieving most of its goals. And the sole outstanding issue—whether double-hulled barges need tug escorts in Buzzards Bay—concerns an area where the Coast Guard is allowed to change its policies. AWO brings this rearguard action to foreclose the potential for any policy change.

What basis does AWO provide for cabining the agency's litigation and policymaking discretion? Not a congressional mandate, but a judicial one. A First Circuit remand, in AWO's view, binds the agency to its old rule and requires it to resurrect the prior litigation. That second appellate loss—according to AWO's unusual argument—forced the United States not to abandon its litigation, but to maintain it.

AWO's interpretation of the remand is incorrect. The First Circuit held that the United States could not enforce a preemptive regulation due to a procedural flaw. While the remand *permitted* the agency to return to court after correcting its procedures, it did not so *require*. Judge Woodlock emphasized that point by strongly encouraging the agency to go back to the drawing board on the tug escort issue.

In light of Judge Woodlock's recommendation, the Coast Guard intends to complete a new rulemaking for Buzzards Bay and has gathered information from relevant stakeholders to that end. While AWO may be concerned by the Coast Guard's new rulemaking process, anxiety is not grounds for forcing the agency to correct deficiencies in, and thus continue pursuing, a prior rulemaking action that has been overtaken by events. Moreover, AWO does not and

cannot contend that the Coast Guard's new rulemaking proceedings have been unreasonably delayed, as explained below.

The final defect in AWO's lawsuit is that it has failed to establish standing.  AWO's true quarrel is with the Commonwealth of Massachusetts, not the United States.  The United States' ability to preempt state law does not make it responsible for injuries flowing from state law.

For these reasons, as explained further below, AWO's mandamus request should be denied.

## BACKGROUND AND STATEMENT OF FACTS

### A.    Oil Spill Prevention In Buzzards Bay

Buzzards Bay is a National Estuary home to numerous fish and marine species, including commercial, recreational, and endangered species.  SOF ¶ 1.[1]  Substantial commercial vessel transits also occur in Buzzards Bay, with hundreds of transits by oil-laden barges each year.  *Id.* ¶ 2.  This confluence of marine life and commercial transit has not been seamless, as several oil spills "have had an adverse impact on people, property, the coast and maritime environment, and the local economy."  *Id.* ¶ 3–4.

Following a large oil spill in 2003, the Commonwealth of Massachusetts (the "Commonwealth" or "Massachusetts") enacted the Massachusetts Oil Spill Prevention Act ("MOSPA").  *See* 2004 Mass. Acts 920 (codified as amended primarily at Mass. Gen. Laws ch. 21, §§ 42, 50B–50E, and ch. 21M).  Although seven MOSPA provisions ventured into areas of Coast Guard authority, only one provision remains in dispute—MOSPA's requirement that a

---

[1] Defendant's Local Rule 56.1 Statement of Undisputed Material Facts and Response to Plaintiff's Local Rule 56.1 Statement of Material Facts (hereinafter, "SOF") is submitted herewith.  All internal citations and quotations have been omitted from the citations to the SOF in this memorandum.

tugboat escort all tank barges (including double-hulled barges) transiting Buzzards Bay carrying more than 6,000 barrels of oil. [2]  *See* M.G.L. c. 21M, § 6.

When MOSPA was enacted, its tugboat escort provision was in tension with an existing regulation, known as the Coast Guard Regulated Navigation Area ("RNA").  *See* Regulated Navigation Area: Navigable Waters Within the First Coast Guard District, 63 Fed. Reg. 71,764, 71,771 (Dec. 30, 1998).  That RNA required tugboat escorts for single-hulled barges in most situations, but did not apply to double-hulled barges.  33 C.F.R. § 165.100(d)(1)(i), (ii) (2000).

## B.    Prior Litigation

The prior litigation proceeded in three phases, more fully explained at SOF ¶¶ 8–40. While the litigation initially focused on preemption, the dispute moved to compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, after the Coast Guard published RNA revisions in 2007.  Following a second appellate vacatur, however, Judge Woodlock recommended that the United States "go back to the drawing board" to make a "definitive determination," or else he would resolve the case "with prejudice."[3]

Preemption Phase (2005–2008): The United States sued the Commonwealth in this district, seeking to enjoin seven MOSPA provisions, as preempted by federal law.  SOF ¶ 8. AWO intervened as a plaintiff.  *Id.*  Following motion practice, Judge Tauro permanently enjoined the Commonwealth from enforcing the challenged MOSPA provisions.  *United States v. Massachusetts*, 440 F. Supp. 2d 24, 37 (D. Mass. 2006), *rev'd in part*, 493 F.3d 1 (1st Cir.

---

[2] SOF ¶¶ 5–7 (detailing seven provisions and implicated Coast Guard authority), 10 (four provisions were permanently enjoined), 20 (the parties resolved their disputes as to the fifth provision), 32 (dispute over the sixth provision became moot in 2015).

[3] Mot. Hr'g Tr., D. 201, at 3:16–22, 9:10–21, 12:25–13:1, *United States v. Massachusetts*, No. 1:05-cv-10112 (D. Mass. Jan. 27, 2015) (hereinafter, "2015 Tr.").

2007).  The Commonwealth appealed the injunction as to three of the seven provisions.  *United States v. Massachusetts*, 493 F.3d at 4.

The First Circuit vacated the injunction and remanded, in relevant part, to determine "whether the Coast Guard sufficiently expressed a clear intent to preempt the state tug escort provisions."  *Id.* at 19.  As the First Circuit explained, while the governing statute "authorizes the Coast Guard to issue regulations" on vessel traffic, "it does not so mandate."  *Id.* at 6; *see also* 46 U.S.C. § 70001(a)(4) (formerly 33 U.S.C. § 1223(a)(4)), Pub. L. 115–282, title IV, §401(a), Dec. 4, 2018, 132 Stat. 4253, 4254 (the Coast Guard "*may* control vessel traffic") (emphasis added).

After the First Circuit mandate issued, the Coast Guard promulgated RNA revisions that clearly expressed its intent to preempt MOSPA's tugboat escort provision:

> To the extent not otherwise already preempted, this rule is intended to, and does, preempt those provisions of Massachusetts' "Act Relative to Oil Spill Prevention and Response in Buzzards Bay and Other Harbors and Bays of the Commonwealth," ("MOSPA") regarding enhanced manning requirements for tank barges and tow vessels in Buzzards Bay, see Mass. Gen. Laws ch. 21M § 4, and tugboat escorts for certain waters, see id. § 6.

Regulated Navigation Area; Buzzards Bay; Navigable Waterways within the First Coast Guard District, 72 Fed. Reg. 50,052, 50,057 (Aug. 30, 2007) (hereinafter, "2007 RNA").  The United States then moved to preliminarily enjoin the Commonwealth from enforcing the tugboat escort provision of MOSPA.  SOF ¶ 20.

In a report adopted by Judge Young,[4] then-Magistrate Judge Sorokin recognized that the preemption issue was settled because "the Coast Guard's statement of preemption clearly and

---

[4] After the First Circuit's remand, the case was reassigned to Judge Lindsay under Local Rule 40.1(k).  SOF ¶ 19.  During Judge Lindsey's prolong illness prior to his death, Judge Young assumed authority over the case.  SOF ¶ 21.

unequivocally states the Coast Guard's intent that its revised regulations preempt" the tugboat escort provision.  SOF ¶¶ 20–21.

NEPA Phase (2008–2014): After the Coast Guard published the 2007 RNA, the Commonwealth amended its counterclaims to allege that the Coast Guard's express preemption statement was invalid for violating NEPA, as the Coast Guard did not prepare an Environmental Analysis ("EA") or an Environmental Impact Statement ("EIS") examining the environmental impacts of preemption.  SOF ¶ 22.  Most of the activity for the next six years focused on NEPA.

Both sides filed summary judgment motions to resolve the NEPA issue.  Judge Woodlock[5] held that the Coast Guard's NEPA violation was "essentially harmless" because "the substance of the Coast Guard's actual rulemaking analysis was the functional equivalent of what an environmental impact statement would have generated," and permanently enjoined enforcement of MOSPA's tugboat escort provision.  *United States v. Massachusetts*, 724 F. Supp. 2d 170, 174–175 (D. Mass. 2010), *rev'd sub nom. United States v. Coal. for Buzzards Bay*, 644 F.3d 26 (1st Cir. 2011).

The First Circuit reversed Judge Woodlock's harmless error determination and vacated the injunction, thereby permitting MOSPA's tug escort requirement to go into effect in 2011.  *Coal. for Buzzards Bay*, 644 F.3d at 37–39.  The Court of Appeals then "return[ed] the case to the district court with instructions to remand it to the Coast Guard for further proceedings consistent with this opinion."  *Id.* at 39.

But the parties were unable to agree which "further proceedings" were consistent with the First Circuit's opinion.  SOF ¶¶ 27–31.  Central to their dispute was the below opinion excerpt:

> Where, as here, an agency has failed to satisfy its obligations under the NEPA and its error is not demonstrably harmless, the appropriate remedy is a remand to the

---

[5] The case was reassigned to Judge Woodlock in August 2009.  SOF ¶ 24.

agency for performance of those obligations. *See, e.g.*, *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 758 (D.C. Cir. 1987).

*Coal. for Buzzards Bay*, 644 F.3d at 39.  Plaintiffs (including intervenor-plaintiff AWO) contended that, because the First Circuit had not expressly vacated the 2007 RNA, the Coast Guard could retroactively perform an EA to remedy the NEPA violation without undertaking new rulemaking.  SOF ¶¶ 27–29.  Not so, according to the Commonwealth, because the First Circuit opinion (by citing *Bowen*) had the effect of vacating the 2007 RNA, thereby requiring the Coast Guard to undertake a new rulemaking process.  *Id.* ¶ 30.

Each side claimed that the Coast Guard's post-remand activity was consistent with its view of the First Circuit's opinion.  In support of plaintiffs' view, the Coast Guard immediately began preparing an EA based on information that would have been available in 2007.  SOF ¶¶ 26–27.  The Coast Guard completed that EA in 2013 and published a Finding of No Significant Impact ("FONSI") in 2014.  *Id.* ¶ 27.

The Commonwealth, on the other hand, argued that the Coast Guard had taken "cooperative effort" with Massachusetts toward "establish[ing] a new regulatory framework for the transportation of oil by tank barges through Buzzards Bay."  SOF ¶ 31.  As support for its claim, the Commonwealth cited a 2013 Advanced Notice of Proposed Rulemaking ("ANPRM"), 78 Fed. Reg. 40651, 40652 (July 8, 2013), in which the Coast Guard sought public comments on a proposal that *double*-hulled tank barges must obtain a tug escort in Buzzards Bay "under certain conditions."  SOF ¶ 31.  In light of the then-pending ANPRM, the Commonwealth urged Judge Woodlock not to upset the "status quo"—in which "industry has in fact been operating in compliance with MOSPA's tug escort requirement for double-hulled tank barges since it was reinstated on July 11, 2011"—until the Coast Guard publicly stated its intentions regarding the ANPRM.  *Id.*

6

Definitive Determination Phase (2015):  The parties' dueling views about appropriate "further proceedings" set the stage for a pivotal 2015 status hearing.  *See* SOF ¶¶ 33–40.  Judge Woodlock began the hearing by expressing "a little bit of puzzlement," as he had "understood the direction from the First Circuit basically to be to the United States to go back to the drawing board," reopening the litigation only once the United States had reached its "end medical result." 2015 Tr., at 3:16–22.  Because the ANPRM "more than touches . . . on the fundamental issues raised in this case," *id.* at 6:15–21, Judge Woodlock recommended that "this particular set of issues is one that would benefit from a definitive determination by the Coast Guard of where it is and where it is going to be," *id.* at 9:10–21.

AWO unsuccessfully sought to dissuade Judge Woodlock from his view that the United States should "go back to the drawing board" and make a "definitive determination."  Because the First Circuit "expressly disclaimed intent to reach other issues beyond the NEPA compliance," AWO argued, "the matter is ripe" now that "[t]he NEPA compliance issues have been addressed."  *Id.* at 14:11–15:19.  Unpersuaded by AWO's argument, *id.* at 15:20–25, Judge Woodlock explained that he was "not asking to have a legal intern look carefully at the language of the Court of Appeals decision to say, 'Look it, they just said, Just NEPA,'" *id.* at 19:9–20, but instead wanted an "adult" to account for "the overarching direction of opinions" by considering whether the Coast Guard should "have done some more to get this teed up," *id.*

While Judge Woodlock left it to plaintiffs to decide whether they wanted to reopen the litigation, he made "clear" that his "role, if this comes back" would be to "drive a stake in the heart of this litigation," *id.* at 16:1–4, by resolving the case "with prejudice," *id.* at 12:25–13:1. He concluded the hearing by telling the United States, if it "wants to go forward, the fat will be

in the fire" and the "fire will be hot." *Id.*, at 22:5–7.  In light of Judge Woodlock's remarks, the United States and AWO each declined to reopen the litigation.  SOF ¶ 40.

### C.      Post-Litigation Activity

After the 2015 hearing, the Coast Guard took the position that it would no longer pursue the 2007 RNA.  SOF ¶ 41.  In 2016, the Coast Guard's then-new First District Commander, Rear Admiral Steven Poulin, informed AWO that he "wanted to take stock of the area" before deciding on a "new RNA for Buzzards Bay."  *Id.*  One year later, the Coast Guard noted several important changes to the rulemaking landscape, including:

- since MOSPA's tug escort requirement had gone into effect in 2011, it had gained support from the two largest petrochemical transporters because it "provide[s] relatively inexpensive layers of additional protection supporting good community relations";

- it may be difficult to justify any "roll back" of protections because "[t]here have been no accidents" since MOSPA's enactment and "tug escort costs are minimal"; and

- "removing escort tug requirements would face extreme opposition because" tug-escort data indicates that approximately 8% of barges rely on their escorts for assistance.

*Id.* ¶ 42.  Thus, rather than spend limited agency resources on environmental analysis of the "obsolete" decade-old 2007 RNA, the Coast Guard charted a path to future rulemaking and has gathered information from relevant stakeholders through a Ports and Waterways Safety Assessment ("PAWSA") in late 2017.  SOF ¶¶ 42–43.

PAWSA participants, including members of the tug and barge industry, convened in February 2018 "for a structured workshop aimed to ensure the environmental protection and safe navigation of the Buzzards Bay waterway system."  SOF ¶ 44.  They reached a consensus that the risks of petroleum discharge and environmental damage "were not balanced by existing mitigations"; one of their "[m]ost commonly cited" recommendations was gaining "Federal support of the Massachusetts Oil Spill Prevention Act (MOSPA) tug escort requirements" as an additional risk mitigation strategy.  SOF ¶ 45.  Since issuing a June 2018 PAWSA report containing these findings, the Coast Guard has been pursuing additional data collection targeted to "gaps" identified by the PAWSA process, in furtherance of its ultimate goal of taking "legally defensible regulatory steps to address risk in the waterway."  *Id.* ¶ 48.

AWO, on the other hand, has expressed concern with the PAWSA process.  *See* SOF ¶ 46.  Although an AWO member that provides petroleum transportation services participated in the PAWSA workshop, AWO raised concerns that there was not sufficient representation of the concerns of petroleum transporters amongst the workshop participants.  *See* SOF ¶¶ 46–47.  Several months after the PAWSA report issued, AWO filed this mandamus action in order to bind the United States to its old rule.

## STANDARD OF REVIEW

As a general matter, any mandamus petition "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  A judicial remedy for "agency *inaction*" is possible only where an agency "'failed to take a *discrete* agency action that it is *required to take*.'" *Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv.*, 674 F.3d 97, 99 (1st Cir. 2012) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)).

"The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law" in order to "protect agencies from undue judicial interference with their lawful discretion."  *Norton*, 542 U.S. at 65–66.  Section 706(1) of the Administrative Procedure Act ("APA") "does not provide a court with a license to substitute its discretion for that of an agency merely because the agency is charged with having unreasonably withheld action."  *AARP v. EEOC*, 823 F.2d 600, 605 (D.C. Cir. 1987).

## ARGUMENT

### A.     AWO Improperly Seeks To Compel Discretionary Agency Action.

1.     Reopening the prior litigation is a discretionary decision not subject to judicial review.

AWO seeks "a writ of mandamus requiring the Agency . . . to set a schedule for reopening the litigation on the merits."  Mem. in Supp. of Pl.'s Mot. for Summ. J., at 6, D. 31-1 (hereinafter, "Mot." or "Motion").  But AWO provides no explanation why the Coast Guard must reopen the litigation.

To the contrary, "litigation decisions are generally committed to agency discretion by law, and are not subject to judicial review under the APA," *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1339 (9th Cir. 1992), especially when they involve an agency deciding against enforcement, *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion").  Thus, the United States' decision not to reopen its own enforcement action against the Commonwealth is a discretionary decision not subject to judicial review.  *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 898 (10th Cir. 2017) (noting that decision against bringing federal preemption action is not subject to judicial review); *Morrison v. U.S. Dep't of Labor*, 713 F. Supp. 664, 669 (S.D.N.Y. 1989) (holding that "decision

not to defend an administrative determination" is a "litigation decision[] which [is] not reviewable under the Administrative Procedure Act").

An agency decision against enforcement is presumptively unreviewable because an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities" when dealing with limited resources.  *Heckler*, 470 U.S. at 832. That rationale applies with particular force here, where AWO asks the Court to compel the Coast Guard to expend limited agency resources enforcing an obsolete decade-old rule, instead of updating the rule in light of changed circumstances.  Because Plaintiff provides no reasoning or precedent why reopening the prior litigation is an action the Coast Guard is "*required to take*," *Norton*, 542 U.S. at 64, mandamus should be denied.  *See Scarborough*, 674 F.3d at 102 ("NEPA cannot be used to make indirectly reviewable a discretionary decision not to take an enforcement action where the decision itself is not reviewable under the APA or the substantive statute.").

> 2. The Coast Guard is not required to "buttress" the NEPA analysis for its 2007 RNA.

AWO also seeks a "writ of mandamus requiring the Agency to comply with the remand order" of the First Circuit, without specifying what the Coast Guard must do to comply.  Mot. at 6.  AWO's position is perplexing because, contrary to its present representations to the Court, AWO told Judge Woodlock that the "conditions imposed by the First Circuit's remand have been satisfied," as the "Coast Guard complied fully with NEPA's requirements and issued a finding of no significant impact on February 26, 2014."  SOF ¶ 29.  Mandamus should therefore be denied as AWO has failed to specify the "*discrete* agency action" that it wants the Coast Guard to take. *Norton*, 542 U.S. at 64.

As best can be gleaned from its Motion, AWO insists that the Coast Guard "*buttress* its NEPA analysis" in some unspecified way (other than the PAWSA process that AWO deems "not

responsive to the remand order").  *See* Mot. at 16, 18 (emphasis added).  But AWO's suggestion

that the Coast Guard's environmental analysis must "buttress" the 2007 RNA is incorrect.  As

the First Circuit recognized, "the role of judicial review is simply to 'insure that the agency has

taken a hard look at environmental consequences,'" while leaving the agency "free to weigh

those effects and decide" on a course of action.  *Coal. for Buzzards Bay*, 644 F.3d at 31 (quoting

*Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21 (1976)).  Given the limited role of judicial

review, the First Circuit could not have required a particular result from the Coast Guard's

environmental analysis.

        3.      The Coast Guard is neither bound to its old rule, nor required to preempt
                MOSPA.

AWO's remaining arguments suggest alternate bases for cabining the agency's

discretion, but none are availing.

*First*, near the end of its motion, AWO suggests that "the clear intent of Congress"

requires the Coast Guard to issue a regulation preempting MOSPA's tug escort requirement in

order to ensure "a uniform set of rules and regulations for navigation in U.S. coastal waters."

Mot. at 19.  But the First Circuit already rejected that argument: while the governing statute

"*authorizes* the Coast Guard to issue regulations" on vessel traffic, "it does not so *mandate*."

*United States v. Massachusetts*, 493 F.3d at 6 (emphases added).  Although the agency has the

authority to make "a preemptive *choice* . . . that tug escort requirements be set by the Coast

Guard," *id.* at 15–19 (emphasis added), there is no Congressional requirement that it do so, *see*

46 U.S.C. § 70001(a)(4) (formerly 33 U.S.C. § 1223(a)(4)) (the Coast Guard "*may* control vessel

traffic") (emphasis added).[6]

---

[6]  Had Congress mandated that the Coast Guard preempt MOSPA's tug escort requirement, the
Coast Guard could not have been required to "consider the environmental effects" of preemption.
*U.S. Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 770 (2004) ("We hold that where an agency

*Second*, AWO suggests that the First Circuit remand requires the agency to continue justifying the 2007 RNA, as this case is a "nearly exact match," Mot. at 9, 13–14, to the circumstances in *In re Core Communications*, 531 F.3d 849, 855 (D.C. Cir. 2008). In *Core*, the D.C. Circuit was concerned that the agency had "effectively nullified" its prior determination that rules were invalid because a "remand without vacatur left those rules in place." *Id.* at 856. But unlike this case, the underlying litigation in *Core* sought to *set aside* an agency rule, not *enforce* one. Because the United States was a plaintiff in the prior MOSPA litigation, the D.C. Circuit's concerns about nullifying a judicial determination do not apply. The rule in question (the Coast Guard's expression of preemptive intent, *see supra* at 4) has not been "left in place" in any meaningful way. Instead, the Commonwealth has been enforcing MOSPA's tug escort provision since 2011. *See* SOF ¶¶ 31, 42.

AWO's broader implication that the First Circuit remand somehow binds the agency to the 2007 RNA is incorrect. By remanding to the Coast Guard to consider the alleged "environmental harm [that] would ensue should the protections afforded by the MOSPA be eliminated and the proposed federal standard adopted," *Coal. for Buzzards Bay*, 644 F.3d at 36, the First Circuit surely contemplated that the Coast Guard might revise the proposed federal standard. *See Radio Television S.A. de C.V. v. F.C.C.*, 130 F.3d 1078, 1083 (D.C. Cir. 1997) ("[A]lthough vacating an order does not foreclose[ ] the possibility that the Commission may develop a convincing rationale for re-adopting the same [order] on remand, there is certainly no mandate that the agency seek to develop such a rationale. It is at least as likely that the agency will abandon its unsuccessful effort.") (alteration in original, internal quotations and citations

---

has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect.").

omitted).  Indeed, the Supreme Court has repeatedly recognized that agencies are free to "adapt

their rules and policies to the demands of changing circumstances," *Permian Basin Area Rate*

*Cases*, 390 U.S. 747, 784 (1968), as they "are neither required nor supposed to regulate the

present and the future within the inflexible limits of yesterday," *Am. Trucking Ass'ns v. Atchison,*

*T. & S.F.R. Co.*, 387 U.S. 397, 416 (1967).

In sum, nothing in the relevant statute or the cases cited by AWO binds the agency to its

old rule or compels the agency to preempt MOSPA's tug escort provision.  To the contrary, the

agency retains ample discretion to "go back to the drawing board," as Judge Woodlock

encouraged it to do.  2015 Tr., at 3:16–22, 9:10–21.

### B.   While The Court Need Not Reach The Question Of Unreasonable Delay, The Coast Guard Has Not Unreasonably Delayed.

The Court need not reach the question of unreasonable delay for two reasons.  *First*, as

explained *supra*, AWO has failed to identify a "*discrete* agency action" that the Coast Guard "is

*required to take.*"  *Norton*, 542 U.S. at 64; *see also* Mot. at 16 (conceding that RNA revisions are

"discretionary rulemaking action"); *see also* SOF ¶ 29 (AWO told Judge Woodlock that the

"conditions imposed by the First Circuit's remand have been satisfied," because the "Coast

Guard complied fully with NEPA's requirements and issued a finding of no significant impact").

*Second*, AWO does not and cannot contend that the Coast Guard's new rulemaking is

unreasonably delayed.  This is not a case where AWO has submitted a rulemaking petition that

the agency has failed to act on.  Instead, AWO seeks to divert resources from the Coast Guard's

rulemaking revisions towards NEPA analysis for an obsolete rule.  Because AWO does not seek

to expedite the Coast Guard's rulemaking process, the Court need not consider the

reasonableness of the Coast Guard's rulemaking timeline.

14

The United States nonetheless briefly responds because AWO's unreasonable delay arguments distort the record in two ways.  *First*, AWO incorrectly claims that, by discontinuing its enforcement action, the Coast Guard has created "environmental risks" to "human health and welfare."  Mot. at 13.  The only specific concerns that AWO cites are moot.  AWO's concerns about MOSPA's "prescribed routes," *id.*, are irrelevant because the Commonwealth has been enjoined from enforcing those routes since 2006, *see* SOF ¶¶ 9–10.  And while the 2007 RNA applies to barges carrying hazardous materials, it requires only "single hull barges," which "no longer exist," to obtain tug escorts.  SOF ¶ 42.  In any event, barges carrying hazardous material through Buzzards Bay retain tug escorts.  *See* AR at 2049.

Instead, AWO's only stake in this fight is the economic interest some of its members have against paying "tug escort costs [that] are minimal" to, *inter alia*, other AWO members.  *See* SOF ¶¶ 42, 47.  As the First Circuit has recognized, an interest that "concerns economic regulation" without implicating "human health and welfare" presents a less compelling case for mandamus.  *Kokajko v. F.E.R.C.*, 837 F.2d 524, 526 (1st Cir. 1988) (denying mandamus in the context of a five-year delay).  Amongst potential economic stakes, AWO's is particularly unconvincing, as even some AWO members have expressed "support [for] MOSPA requirements because they provide relatively inexpensive layers of additional protection supporting good community relations."  SOF ¶ 42.

*Second*, AWO has incorrectly framed the issue as a "delay of eight years, with roughly five years of no action directly responsive to NEPA analysis of the existing rule."  Mot. at 17.  But counting from the 2011 First Circuit remand is inappropriate, as AWO essentially admitted in 2014.  *See* SOF ¶ 29 (the "conditions imposed by the First Circuit's remand have been satisfied," because the "Coast Guard complied fully with NEPA's requirements and issued a

finding of no significant impact").  Instead, any delay clock would have been reset by the 2015

hearing where Judge Woodluck strongly suggested that, instead of "Just NEPA" analysis, the

Coast Guard account for the "overarching direction of opinions," 2015 Tr. at 19:9–20, and "go

back to the drawing board," *id.* at 3:16–22, to provide a "definitive determination" of its tug

escort policy, *id.* at 9:10–21.  That hearing occurred only four years ago, a period of delay that

the First Circuit has found insufficient to justify mandamus when only economic interests are at

stake.  *See Kokajko*, 837 F.2d at 526.  And the Coast Guard has made continual progress toward

that goal since the hearing.  *See* SOF ¶¶ 41–48.

In sum, because AWO does not ask the Court to compel a revised RNA—the action the

Coast Guard is currently undertaking—the Court need not address the reasonableness of the

Coast Guard's rulemaking timeline.  Nonetheless, as explained above, the Coast Guard has not

unreasonably delayed its RNA revisions.

### C.    AWO Lacks Standing To Bring This Action.

AWO bears the burden of proof to establish standing to bring its claim.  *Am. Chemistry

Council v. Dep't of Transp.*, 468 F.3d 810, 818 (D.C. Cir. 2006).  But it has failed to carry this

burden because the only injury that AWO identifies (having to hire tug escorts) is neither caused

by the United States nor likely to be redressed by a decision compelling Coast Guard action.

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan

v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an

injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical."  *Id.* (quotation marks and citations omitted).  "Second, there must

be a causal connection between the injury and the conduct complained of—the injury has to be

fairly traceable to the challenged action of the defendant, and not the result of the independent

action of some third party not before the court."  *Id.* (quotation marks and alterations omitted).

"Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (quotation marks omitted).

Assuming *arguendo* that AWO has stated a cognizable injury (*i.e.*, that its members must hire escort tugs in Buzzards Bay they would otherwise not hire), AWO has still failed to establish standing because that injury is not "fairly traceable to the challenged action" of the Coast Guard in declining to reopen its preemption suit against the Commonwealth.  *See Lujan*, 504 U.S. at 560.  As AWO concedes, its "members are being forced to comply with a *state* law," not a federal law.  Mot. at 10 (emphasis added).  AWO's injury thus stems from "the independent action of some third party not before the court"—the Commonwealth of Massachusetts.  *See Lujan*, 504 U.S. at 560.

The D.C. Circuit has rejected a similar "Failure to Preempt" theory of causation in *American Chemistry Council*, 468 F.3d at 816–819.  The plaintiff in that case was burdened by local fire department ordinances that increased its business costs.  *Id.*  The plaintiff alleged that those ordinances "would have been preempted" by federal law, had the agency taken action required by Congress.  *Id.* at 816.  But the D.C. Circuit dismissed the suit for lack of standing because a federal agency is not "fairly responsible" for injuries caused by state or local law.  *Id.* at 817.  In short, causation is not satisfied merely because the United States has the power to prevent Plaintiff's injury; instead, the United States must bear responsibility for the injury.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting a long line of Supreme Court "decisions consistently hold[ing] that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution").  Because the United States bears no responsibility for AWO's injury, AWO lacks standing.

Nor can AWO establish redressability.  Standing requires a plaintiff to establish that a favorable decision will *likely* redress its injury.[7]  AWO cannot establish that forcing Coast Guard action is likely to eliminate the state law causing its injury.  Given the Coast Guard's discretion to either adopt the state tug escort rule as federal law or avoid preempting that rule, *see supra* at 8–9, 12–12, AWO bears a heavy burden to show that compelling Coast Guard action is likely to have the desired effect.  *See Am. Chemistry Council*, 468 F.3d at 819 ("The Secretary's ability to waive preemption constitutes yet another obstacle for petitioners to overcome in demonstrating that preemption is likely.").  Because it has not met that burden, AWO lacks standing to bring this action.

## CONCLUSION

For the foregoing reasons, AWO's summary judgment motion should be denied and summary judgment for the United States should be entered.

---

[7] AWO notably does not allege a procedural injury.  Nor could it.  "'To establish injury-in-fact in a procedural injury case,' . . . 'petitioners must show that the government act performed without the procedure in question [here, sufficient NEPA review] will cause a distinct risk to a particularized interest of the plaintiff.'" *Town Of Winthrop v. FAA*, 535 F.3d 1, 6 (1st Cir. 2008) (quoting *City of Dania Beach v. FAA*, 485 F.3d 1181, 1185 (D.C. Cir. 2007)) (alteration in *Winthrop*).  Because AWO cannot identify "a particularized environmental interest of [its] that will suffer demonstrably increased risk" from the Coast Guard's NEPA processes, it cannot claim a constitutionally valid procedural injury.  *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (en banc).

DATE: May 31, 2019                 Respectfully submitted,

                                   JEAN E. WILLIAMS
                                   Deputy Assistant Attorney General
                                   Environment and Natural Resources Division


                                    /s/ Luther L. Hajek
                                   LUTHER L. HAJEK
                                   Trial Attorney, Natural Resources Section
                                   United States Department of Justice
                                   Environment & Natural Resources Division
                                   999 18th St., South Terrace, Suite 370
                                   Denver, CO 80202
                                   Telephone: 303-844-1376
                                   Facsimile: 303-844-1350
                                   E-mail: luke.hajek@usdoj.gov

                                   MICHAEL S. SAWYER
                                   Trial Attorney, Natural Resources Section
                                   United States Department of Justice
                                   Environment & Natural Resources Division
                                   601 D St. NW
                                   Washington, DC 20004
                                   Telephone: 202-514-5273
                                   E-mail: michael.sawyer@usdoj.gov

                                   ANDREW E. LELLING
                                   United States Attorney

                                   Michael Sady (BBO #552934)
                                   Assistant U.S. Attorney
                                   U.S. Attorney's Office
                                   1 Courthouse Way, Suite 9200
                                   Boston, MA  02210
                                   (617) 748-3100
                                   E-mail: Michael.Sady@usdoj.gov

                                   *Counsel for Defendant*

OF COUNSEL:

Brian Judge
Heather Kennealy
United States Coast Guard

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, I filed a true and correct copy of the foregoing document with the Court's CM/ECF system, which will generate a Notice of Filing to the attorneys of record.

/s/ *Michael S. Sawyer*
MICHAEL S. SAWYER
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment & Natural Resources Division
601 D St. NW
Washington, DC 20004
Telephone: 202-514-5273
E-mail: michael.sawyer@usdoj.gov