**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMERICAN WATERWAYS OPERATORS,

Plaintiff,

v.

UNITED STATES COAST GUARD,

Defendant.

Civil Action No. 18-12070-DJC

**MEMORANDUM OF LAW IN SUPPORT OF THE COMMONWEALTH OF MASSACHUSETTS' MOTION FOR LEAVE TO INTERVENE AS A DEFENDANT**

MAURA HEALEY
ATTORNEY GENERAL

Seth Schofield, BBO No. 661210
*Senior Appellate Counsel*
Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 963-2436
seth.schofield@mass.gov

Dated: May 31, 2019

[BLANK]

## TABLE OF CONTENTS

Page

Introduction ..... 1

Background ..... 1

Argument ..... 5

I. The Commonwealth is Entitled to Intervene as of Right ..... 5

A. The Commonwealth's Motion is Timely ..... 6

B. The Commonwealth Has Important Interests in this Action. ..... 8

C. The Commonwealth's Interests Will Be Impaired Absent Intervention. ..... 10

D. Existing Parties Do Not Adequately Represent the Commonwealth's Interests. ..... 11

II. In the Alternative, the Court Should Exercise its Discretion to Grant Permissive Intervention. ..... 12

Conclusion ..... 14

Certificate of Service ..... 14

[BLANK]

## INTRODUCTION

Plaintiff American Waterways Operators (AWO) seeks to enforce a judgment secured by the Commonwealth of Massachusetts (Commonwealth) in a separate action as backdoor means to invalidate a state environmental protection law, which that judgment protected. It brings this action now despite both previously informing this Court (Woodlock, J.) that the Coast Guard had complied with that judgment and withdrawing voluntarily its motion to reopen that litigation. The Commonwealth's interests in this misguided and unsupported action are manifest—again, AWO seeks to enforce a judgment secured by the Commonwealth to sue the Commonwealth and re-expose a duly enacted law of a sovereign state to a federal constitutional challenge. Allowing the Commonwealth to intervene is thus necessary to allow it to fully protect its own interests in this litigation and will not prejudice the existing parties. Indeed, the Court just recently scheduled a hearing for August 28, 2019 on AWO's motion and the Coast Guard's cross-motion for summary judgment, ECF No. 32—a date that should provide sufficient time for the Commonwealth to file an opposition to AWO's motion for summary judgment without the need to reschedule that hearing or delay the resolution of this action on the merits. For these reasons, as explained more fully below, the Court should allow the Commonwealth's Motion for Leave to Intervene as a matter of right or, in the alternative, by permission.

## BACKGROUND

"Buzzards Bay is a brilliant jewel in the diadem of Massachusetts waters." *United States v. Coalition for Buzzards Bay*, 644 F.3d 26, 28 (1st Cir. 2011). On April 27, 2003, however, a tank barge strayed off course, struck underwater rocks, and spilled an estimated 98,000 gallons of oil into the Bay. The spill fouled the waters, killed or injured hundreds of sea birds, some of which were and remain endangered species, closed valuable shell fishing areas and beaches, and

destroyed or impacted valuable coastal natural resources. *See* Consent Judgment, *United States v. Bouchard Transp. Co.*, No. 17-cv-12046-NMG (D. Mass., entered Jan. 24, 2018) (ECF No. 14) (requiring payment to the United States, Massachusetts, and Rhode Island of $13,300,000 to compensate for injuries to certain sea birds); Consent Judgment, *United States v. Bouchard Transp. Co.*, No. 10-cv-11958 -NMG (D. Mass., entered Nov. 15, 2010) (ECF No. 19) (requiring payment to the United States, Massachusetts, and Rhode Island of $6,076,393 to compensate for injuries to recreational use, shoreline and aquatic resources, and certain sea birds). "Bad things sometimes lead to good things," the First Circuit remarked in revealing its own view of the matter, *Coalition for Buzzards Bay*, 644 F.3d at 29, and, a year later, the Massachusetts legislature enacted the Massachusetts Oil Spill Prevention Act (MOSPA) to prevent other oil spills and their devastating impacts from occurring again in Massachusetts' waters. Mass. Gen. Laws ch. 21, §§ 50B-50E, ch. 21M, §§ 1-8, ch. 103, §§ 1, 21, 28. That law requires, among other things, tank barges transporting oil through Buzzards Bay to be accompanied by tugboat escorts that can assist in the event of an on-water incident that could lead to another oil spill. *See* Mass. Gen. Laws ch. 21M, § 6.

In 2005, the United States, together with AWO and other industry groups not parties to this action, as intervenor-plaintiffs, challenged MOSPA claiming that it was preempted by federal law. With the exception of one MOSPA provision, on July 24, 2006, this Court held that the challenged State law provisions were preempted and enjoined the Commonwealth from enforcing them. *United States v. Massachusetts*, 440 F. Supp. 2d 24, 48 (D. Mass. 2006). The First Circuit reversed and remanded the case for further consideration of three of MOSPA's provisions. *United States v. Massachusetts*, 493 F.3d 1 (1st Cir. 2007). Two months later, the Coast Guard promulgated a Final Rule for Buzzards Bay, which purported to expressly preempt

MOSPA's enhanced personnel and escort requirements.  72 Fed. Reg. 50,052 (Aug. 30, 2007) (codified at 33 C.F.R. § 165.100).  This Court then denied the Commonwealth's counter-claims that the Coast Guard violated the Administrative Procedure Act and the National Environmental Policy Act (NEPA) when it issued the 2007 Rule and granted the United States' and AWO's motions for summary judgment and entered a permanent injunction.  *See United States v. Massachusetts*, 724 F. Supp. 2d 170, 175 (D. Mass. 2010).

The Commonwealth and intervenor-defendant Buzzards Bay Coalition again appealed, and the First Circuit yet again reversed.  In its decision, the Court held that the Coast Guard "ha[d] failed to satisfy its obligations under . . . NEPA and its error [was] not harmless." *Coalition for Buzzards Bay*, 644 F.3d at 39.  The "appropriate remedy," the Court continued, was "to remand to the agency for performance of those obligations," *id.*, and, accordingly, the Court "reverse[d] the entry of summary judgment, vacate[d] the injunction, and returne[d] the case to the district court with instructions to remand it to the Coast Guard for further proceedings consistent with th[e] opinion," *id.*  On August 19, 2011, this Court entered an order remanding the case to the Coast Guard and administratively closed the case "without prejudice to the right of any party to restore it to the active docket upon termination of the remand proceedings by filing an appropriate motion."  Civ. A. No. 05-cv-10112-DPW, ECF No. 187.

On February 27, 2014, the Coast Guard notified the Court that the agency had "prepared a Finding of No Significant Impact (FONSI) [under NEPA] based on the Final Environmental Assessment (Final EA) for" its 2007 Final Rule for Buzzards Bay.  Civ. A. No. 05-cv-10112-DPW, ECF No. 189.  At that time, the Coast Guard also informed the Court "that . . . it [had] published in the Federal Register an Advance Notice of Proposed Rulemaking to give notice and request public comments concerning the Coast Guard's potential modification of the regulatory

requirements for" Buzzards Bay, and that "[a]ny such changes . . . would replace, in whole or in part, those requirements implemented by the 2007 [Final Rule] which have been at issue in this litigation." *Id.* On August 5, 2014, AWO filed a motion to reopen the case because, in its own words, "[t]he Coast Guard complied fully with NEPA's requirements," the "matter [was] ripe for adjudication," and [t]he conditions imposed by the [First Circuit] . . . ha[d] been met." ECF No. 190, at 3. A day later, the United States filed a similar motion, stating that the Coast Guard had complied with the judgment on remand and that "[t]he remand proceedings ha[d] concluded." ECF No. 191, at 1-2. The Commonwealth opposed those motions on the basis that "[t]he Coast Guard's initiation of a new rulemaking . . . render[ed] th[e] matter unripe for further judicial review." ECF No. 195, at 6.

The Court (Woodlock, J.) held a hearing on AWO's and the United States' motions to reopen the case. During that hearing, AWO's counsel (the same counsel that represents them in this matter) reiterated AWO's view that "the matter is ripe" for review and that "[t]he NEPA compliance issues have been addressed" and, as a result, the Coast Guard had complied with the remand order. Hr'g Tr. at 15, lines 11-13 (Civ. A. No. 05-cv-10112-DPW, ECF No. 201). Counsel for the United States reiterated the Coast Guard's view that the agency had complied with the remand order. *Id.* at 4, lines 15-22. The Court, however, expressed concern about engaging in what it described as a game of "administrative law 'Whack-A-Mole'" with the Coast Guard equivocating on whether it planned to conduct a new rulemaking that could affect the issues before the Court. *See id.* at 12, lines 21-23. While the Coast Guard argued that there existed a "clear case and controversy" then based on an alleged conflict between the 2007 Final Rule and MOSPA, *id.* at 11, lines 14-15, the United States ultimately withdrew its motion to reopen the case, Civ. A. No. 05-cv-10112-DPW, ECF No. 203, and AWO later withdrew its own

motion as well, *id.* ECF No. 205.[1] Nothing, of course, required the Coast Guard to reopen that case at all—not then or now. Since that time, tank barges transporting oil through Buzzards Bay have complied with MOSPA's requirements that they be accompanied by a tugboat escort to mitigate the risk of another oil spill in Buzzards Bay, and, as the Coast Guard recently confirmed, "there is no current controversy between the Coast Guard and Massachusetts." Jt. Local R. 16(1)(D) Stmt. at 2 (ECF No. 19). AWO's effort to instigate a controversy through this action where none currently exists threatens renewed litigation about the validity of Massachusetts' long-standing environmental protection law.

## ARGUMENT

### I. The Commonwealth is Entitled to Intervene as of Right

The Commonwealth satisfies Federal Rule of Civil Procedure 24(a)(2)'s requirements for intervention as of right. That Rule allows intervention as of right for any party that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To satisfy Rule 24(a)(2) in this Circuit the "would-be intervenor must demonstrate that:

> (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.

[1] AWO has failed to make any mention of why it did not raise these issues in the existing docket assigned to Judge Woodlock—the District Court judge most familiar with the issue presented by this case, its history, and the judgment and remand order AWO seeks to enforce in this new action as a means to reopen the related action administratively closed by Judge Woodlock—and in which the Commonwealth is already a party. *See United States v. Massachusetts*, Civ. A. No. 05-cv-10112-DPW (D. Mass.). Indeed, as explained *infra*, AWO goes so far as to ask this Court for an order setting a schedule to reopen Judge Woodlock's case.

*Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011) (citation omitted). The Commonwealth's motion satisfies each of these factors.

**A. The Commonwealth's Motion is Timely**

The Commonwealth satisfies Rule 24(a)(2)'s timeliness requirement when considered, as it must be, in the context "of the relevant circumstances." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) (citations omitted). In this Circuit courts consider four factors to assess timeliness:

> (i) the length of time that the putative intervenor knew or reasonable should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). As the First Circuit has emphasized, however, "the concept of timeliness . . . is not measured, like a statute of limitations, in terms of units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation." *Puerto Rico Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura*, 637 F.3d 10, 15 (1st Cir. 2011). And while it still "retains considerable bite," the timeliness factor is "applied less strictly with respect to intervention as of right." *R & G Mortg.*, 584 F.3d at 8.

Under the first factor, "a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists." *Greenblatt*, 964 F.2d at 1231. In this case, as described in more detail below, that occurred when AWO filed its summary judgment motion on April 26, 2019. ECF No. 31-1. While AWO filed its complaint on October 4, 2018, ECF No. 1, and the Coast Guard filed its answer on December 4, 2019, ECF No. 8, AWO and the Coast Guard noted a dispute regarding the administrative record and the need for

discovery in their February 8, 2019 Local Rule 16.1(D) Statement that suggested the possibility of considerable delay prior to any merits-based motion practice, *see* ECF No. 19, at 3-5. Later, on February 14, 2019, counsel for the Coast Guard offered to supply the Commonwealth with a copy of the administrative record, which offer the Commonwealth accepted. This Court held a scheduling conference on February 25, 2019, which undersigned counsel for the Commonwealth observed and at which the Court declined to adopt a summary judgment schedule, established a motion practice schedule for resolving the administrative record issues, and scheduled a status conference for May 20, 2019. Without any subsequent notice to the Commonwealth, AWO and the Coast Guard resolved their administrative record dispute, filed an amended administrative record, which was not similarly provided to the Commonwealth, and agreed on a schedule for summary judgment, which this Court adopted on April 25, 2019. ECF No. 29.

AWO filed its summary judgment motion on April 26, 2019. ECF No. 31. AWO's memorandum in support of its summary judgment motion made clear that the result it seeks to secure through this action implicates directly the Commonwealth's interest in defending its longstanding state law that protects Buzzards Bay from oil spills—MOSPA. For example, AWO "asks the Court to issue a writ of mandamus requiring the [Coast Guard] to comply with the remand order and to set a schedule for reopening the" the administratively closed case in which the United States and AWO as an intervenor-plaintiff seek to invalidate MOSPA. Mem. in Supp. of AWO's Mot for Summ. J. at 6 (ECF No. 31-1). At that point, it became clear that some "measurable risk exist[ed]" vis-à-vis the Commonwealth's interests. *Greenblatt*, 964 F.2d at 1231. Being aware of that risk and the parties' acceleration of the schedule for summary judgment, the Commonwealth took action as promptly as possible given the circumstances to prepare and file its Motion for Leave to Intervene in this action to protect those interests.

The Commonwealth's intervention will not prejudice AWO or the Coast Guard and, even if it would, that prejudice would be greatly outweighed by the prejudice to Commonwealth if its Motion to Intervene were denied. First, the Court has just recently scheduled a hearing for August 28, 2019 on AWO's motion and the Coast Guard's cross-motion for summary judgment, ECF No. 32—a date that should provide sufficient time for the Commonwealth to file a brief addressing the issues without the need to reschedule that hearing or delay in any way resolution of this action on the merits. Second, even if allowing the motion would cause some delay, any claim that the Commonwealth unduly delayed seeking to intervene in this action is undermined by the fact that at least AWO and possibly the Coast Guard were aware both that the Commonwealth was present for the February 25, 2019 scheduling conference at which the Court declined to set a summary judgment schedule and that the Commonwealth was contemplating the necessity of intervening. Yet, despite that knowledge, the Commonwealth was not alerted to the changed circumstances or provided—as had previously occurred—with a copy of the amended administrative record. *See* ECF No. 20. Third, as explained next, denying this motion, would significantly prejudice the Commonwealth's interests.

**B.    The Commonwealth Has Important Interests in this Action.**

The Commonwealth has important interests in this action that justify its intervention as a matter of right. To satisfy this second requirement, the Commonwealth must identify an interest "relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). While that interest must be "direct" and "significantly protectable," *Unger*, 634 F.3d at 51 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)), it need not be of a legal nature identical to that of claims asserted in the main action," *In re Lopez Soto*, 764 F.2d 23, 26 (1985)

(citation omitted). Here, the Commonwealth has a direct, significantly protectable interest in this action.

The Commonwealth, a sovereign state, is "vested with the responsibility of protecting the health, safety, and welfare of its citizens," *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth*., 550 U.S. 330, 342 (2007), and its natural resources, *see Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907). States also have an "important role . . . in regulation of the Nation's waterways and ports," *United States v. Locke*, 529 U.S. 89, 109 (2000), and retain a "wide scope" of authority to regulate maritime commerce, *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 338 (1973). In this vein and in direct response to the devastating impacts of the 2003 oil spill in Buzzards Bay and inadequate federal regulation, *supra* pp.1-2, the Massachusetts legislature enacted MOSPA to prevent another oil spill and to "protect the unique and sensitive waterways of the commonwealth," 2004 Mass. Acts ch. 251 *preamble*. That law, described by the First Circuit as a "good thing," *Coalition for Buzzards Bay*, 644 F.3d at 29, was subject to an aggressive, years-long effort to invalidate it by the United States and AWO as an intervenor. The First Circuit, however, rebuffed those efforts—twice—and for the last *eight* years MOSPA has afforded significant and documented protection against further oil spills in Buzzards Bay. Of particular importance and relevance here is the MOSPA provision AWO would like to try again to invalidate: a requirement that all tank barges transporting oil through Buzzards Bay be accompanied by a tugboat escort to aid in the event of an on-water incident that could lead to another devastating oil spill in Buzzards Bay. *See* Mass. Gen. Laws ch. 21M, § 6.

Discontent with the Coast Guard's decision not to try a third time to invalidate MOSPA, AWO has filed this action to try to force the Coast Guard to exercise its discretion to reignite the

prior litigation so that AWO may once again seek to invalidate MOSPA. Indeed, in its memorandum of law, AWO complains at least eight separate times about the Coast Guard's claimed failure to "reopen[] the litigation on the merits." Summ. J. Mem. at 6, 8, 15, 16-17, 19. It seeks to effect that result under the guise of enforcing a judgment secured by the *Commonwealth* in that prior litigation—the judgment that led to the eight-year period during which MOSPA has applied without controversy and protected Massachusetts waters and its natural resources from another oil spill. In other words, AWO, an intervenor-plaintiff in that prior action, is suing the United States, a plaintiff in that prior action, to enforce a judgment obtained by the Commonwealth, the defendant in that prior action. And if AWO is successful here, the Commonwealth may once again be forced to engage in what would be another prolonged and resource intensive fight to defend MOSPA—a duly enacted state law that the Commonwealth views as critical to the protection of Buzzards Bay and its natural resources. These important, sovereign interests readily satisfy Rule 24(a)(2)'s interest requirement.

**C. The Commonwealth's Interests Will Be Impaired Absent Intervention.**

The Commonwealth needs to intervene in this action so that its interests are not impaired. To satisfy this third requirement, the Commonwealth must demonstrate that disposition of this action may, as a practical matter, "impair or impede its ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2). To determine whether this requirement is met, courts consider "the practical consequences of denying intervention." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation and internal quotation omitted); *accord Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110-11 (1st Cir. 1999) (holding that "'practical' test of adverse effect that governs under Rule 24(a)" was "easily satisfied" by

showing that proposed intervenor's interests would be "adversely affected" if lawsuit were lost). This requirement is also satisfied in this case.

AWO, again, "asks this Court to issue a writ of mandamus requiring the [Coast guard] to comply with the remand order and to set a schedule for reopening the litigation on the merits." Summ. J. Mem. at 6. The litigation it asks this Court to reopen is the administratively closed case before Judge Woodlock (Civ. A. No. 05-cv-10112-DPW) in which, again, the United States is the plaintiff, AWO is an intervenor-plaintiff, and the Commonwealth is the defendant, and the United States and AWO's claim is that federal law preempts MOSPA. A ruling against the United States in this action and issuance of the accompanying order requested by AWO would not just have practical consequences for the Commonwealth, it would have direct, adverse consequences for the Commonwealth in that it would re-expose a duly enacted law of a sovereign state to a federal constitutional challenge and require the expenditure of significant time and resources of the Commonwealth to defend the state law a third time. Accordingly, the Commonwealth easily satisfies the "impairment of interest" requirement for intervention as of right.

**D. Existing Parties Do Not Adequately Represent the Commonwealth's Interests.**

Finally, no existing party will adequately represent the Commonwealth's interests in this action. On this fourth factor, the First Circuit has made clear that a proposed intervenor's burden to show that their interests will not be adequately represented by existing parties is a "minimal one." See *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Maine v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 18 (1st Cir. 2001). The intervenor "need only show that representation may be inadequate, not that it is inadequate." *Conservation Law Found. of N.*

*Eng. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (citing *Trbovich*, 404 U.S. at 538 n.10). The Commonwealth satisfies this requirement as well.

The Commonwealth's interests are not clearly represented by the Coast Guard. While the Commonwealth appreciates the Coast Guard's statement that "there is no current controversy between the Coast Guard and the Massachusetts," Local R. 16.1 Stmt. at 2, the United States on the Coast Guard's behalf spent six years trying to invalidate MOSPA and initiated the process to begin that effort again in 2014. And there is, of course, no guarantee that the Coast Guard will not change its view once again in response to this lawsuit. As described above, the Commonwealth also has sovereign interests that no other party can represent. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007) (state interests are entitled to "special solicitude"). Indeed, the Commonwealth has "unique sovereign interests not shared by the federal government," *see WildEarth Guardians v Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017), and, even if that were not the case, "the mere fact that [the Coast Guard—the Commonwealth' long-term litigation foe—] might hypothetically take [the Commonwealth's] interests into account when shaping [its] arguments does not mean that [it] would afford the same primacy to" them, *see Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 19-20 (D.D.C. 2010). Accordingly, the Coast Guard cannot be expected to adequately represent the Commonwealth's interests in this case.

## II. In the Alternative, the Court Should Exercise its Discretion to Grant Permissive Intervention.

Even if the Court concludes that the Commonwealth does not meet the standard for intervention as a matter of right, which it should not for all the reasons described above, it should nevertheless exercise its discretion to permit the Commonwealth to intervene in this litigation under Federal Rule of Civil Procedure 24(b)(1). *See, e.g.*, *Morra v. Casey*, 960 F. Supp. 2d 335, 338 (D. Mass. 2013) (concluding that while proposed intervenor was not entitled to intervene as

of right, "[n]evertheless, the court may allow [the proposed intervenor] to intervene under Rule 24(b)(2)"). As described next, the Commonwealth also satisfies the requirements for permissive intervention.

Permissive intervention is appropriate where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts have "broad discretion" in deciding whether to grant permissive intervention under Rule 24(b). *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 641 (1st Cir. 1989). The First Circuit has articulated three factors courts should consider to decide whether permissive intervention is warranted: "(i) the applicant's claim or defense and the main action have a question of law or fact in common; (ii) the applicant's interests are not adequately represented by an existing party; and (iii) intervention would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (citation omitted).

For the reasons discussed above, the Commonwealth satisfies these considerations. The Commonwealth, as explained, has a direct and significant interest in this action and its outcome, because, among other reasons, a ruling against the United States could result in reactivating litigation against the Commonwealth in a related, administratively closed case. Allowing the Commonwealth to intervene would not unduly delay or prejudice the existing parties and, as described above, any possible delay in this case is significantly outweighed by the prejudice that would befall the Commonwealth if its motion were denied and is mitigated by the existing parties' failure to notify the Commonwealth regarding the changed schedule despite their prior communications. Finally, the Commonwealth does not desire to merely rehash arguments that the United States may present to defend against AWO's claim but instead it seeks to present its own interests and perspective regarding the claims and issues at stake in this action. *See*

*Daggett,* 172 F.3d at 113 ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.") (citation omitted)).

**CONCLUSION**

For the foregoing reasons, the Commonwealth respectfully requests that the Court grant its Motion for Leave to Intervene and allow it to intervene as of right in this matter or, alternatively, that the Court, in its discretion, permit the Commonwealth to intervene.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS

By its attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Seth Schofield
Seth Schofield, BBO No. 661210
*Senior Appellate Counsel*
Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 963-2436
seth.schofield@mass.gov

Dated: May 31, 2019

**CERTIFICATE OF SERVICE**

I, Seth Schofield, certify that the foregoing Memorandum, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 31, 2019.

/s/ Seth Schofield
Seth Schofield

19-05.31 [2] - MA Mem. in Supp. Interv [fnl].docx