UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN WATERWAYS OPERATORS, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES COAST GUARD, <br><br> Defendant. | Case No. 18-cv-12070-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                              **January 22, 2020**

### I. Introduction

Plaintiff American Waterways Operators ("AWO") has filed this lawsuit against Defendants the United States Coast Guard (the "Coast Guard") seeking relief under the Mandamus Act and All Writs Act and the Administrative Procedure Act. 28 U.S.C. §§ 1361; 5 U.S.C. § 706(a). D. 1. AWO has moved for summary judgment, D. 31, and the Coast Guard has cross-moved for summary judgment. D. 37. Intervenors the Commonwealth of Massachusetts (the "Commonwealth") and Buzzards Bay Coalition have filed memoranda opposing AWO's motion for summary judgment and supporting the Coast Guard's cross-motion for summary judgment. D. 52; D. 53. For the reasons stated below, the Court DENIES AWO's motion, D. 31, and ALLOWS the Coast Guard's motion, D. 37.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

Unless otherwise noted, the following facts are undisputed. AWO is the national trade association of the U.S. tugboat, towboat and barge industry. D. 31-2 ¶ 1.[1] AWO's members operate in the waters of Massachusetts and are, therefore, subject to both Massachusetts and federal law. D. 31-2 ¶ 1. The Coast Guard is a military and maritime service and an agency of the United States. D. 31-2 ¶ 4. In August 2004, the Commonwealth of Massachusetts enacted the Massachusetts Oil Spill Prevention Act ("MOSPA"). D. 31-2 ¶ 5; D. 37-2 ¶ 5; see Mass. Gen. L.

---

[1] The Court notes that facts asserted with no response are deemed admitted. Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1) (providing that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties").

c. 21, §§ 42, 50B-50E; c. 21M §§ 1-8; c. 103 §§ 21, 28. MOSPA placed various requirements on tugboats and tank vessels operating in Massachusetts state waters, D. 31-2 ¶ 6; D. 37-2 ¶¶ 5-7, including the requirement that remains at the core of the present dispute—that tugboats must escort certain barges through Buzzards Bay (the "Tugboat Escort Requirement"), see D. 37-2 ¶5 5; D. 50-1 ¶ 108.

    A.    **2005-2008 Litigation**

In 2005, the Coast Guard sued the Commonwealth in this Court seeking to enjoin certain provisions of MOSPA as preempted by federal law (the "Coast Guard's Suit"). D. 31-2 ¶¶ 10-11; D. 37-2 ¶ 8. AWO intervened as an intervenor-plaintiff in the Coast Guard's Suit. D. 31-2 ¶ 12; D. 37-2 ¶ 8. This Court (Tauro, J.) held that seven challenged provisions of MOSPA were "preempted, invalid, and unconstitutional under the Supremacy Clause of the United States Constitution" and permanently enjoined the Commonwealth from enforcing the provisions. United States v. Massachusetts, 440 F. Supp. 2d 24, 48 (D. Mass. 2006). The Commonwealth appealed as to three of the seven provisions: (1) the financial assurance requirements, Mass. Gen. L. c. 21, § 50C, (2) the manning requirement for single-hulled vessels, Mass. Gen. L. c. 21M, § 4, and (3) the tugboat escort requirements, Mass. Gen. L. c. 21M, § 6. D. 37-2 ¶ 10; D. 50-1 ¶ 86. The First Circuit vacated the district court's decision and remanded to the district court for proceedings consistent with its ruling. See United States v. Massachusetts, 493 F.3d 1, 4 (1st Cir. 2007). Specifically, the First Circuit held that the district court erred in (1) failing to conduct an overlap analysis for the manning requirement, id. at 13-14, (2) failing to adequately consider a 2006 Coast Guard statement regarding the tugboat escort provision, id. at 19, and (3) failing to develop the record regarding the financial assurance requirement, id. at 20-25. On remand, the First Circuit directed the district court to conduct an overlap analysis, consider whether the Coast

3

Guard's 2006 statement expressed a clear intent to preempt the tugboat escort provision (and, if so, whether that was consistent with congressional intent) and further develop the record on the effect of the financial assurance requirement. See id. at 13-14, 19, 20-25.

In 2007, after the First Circuit's remand, the Coast Guard published the Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways Within the First Coast Guard District (the "2007 RNA"). D. 31-2 ¶ 18; D. 37-2 ¶ 18; see Regulated Navigation Area; Buzzards Bay, MA; Navigable Waterways within the First Coast Guard District, 72 Fed. Reg. 50,052-02 (Aug. 30, 2007). The 2007 RNA expressed an intent to preempt MOSPA's tugboat escort provisions and manning requirement for single-hulled vessels. D. 31-2 ¶ 18-19; D. 37-2 ¶ 18. After publication of the 2007 RNA, the Commonwealth amended its counterclaims to allege that the Coast Guard's statement of preemption in the 2007 RNA was invalid for failing to prepare an Environmental Analysis or an Environmental Impact Statement in violation of the National Environmental Policy Act ("NEPA"). D. 37-2 ¶ 22. The parties resolved their differences regarding the financial assurance requirements, D. 37-2 ¶ 20, so the district court's review on remand was limited to the manning requirement for single-hulled vessels and the tugboat escort requirement, D. 31-2 ¶ 20; D. 37-2 ¶ 24.

In March 2010, this Court (Woodlock, J.), on summary judgment, adopted the report and recommendation of the magistrate judge (Sorokin, J.) and ruled in favor of the Coast Guard and permanently enjoined enforcement of the two remaining provisions on the grounds that they were preempted by the 2007 RNA. United States v. Massachusetts, 724 F. Supp. 2d 170, 174-75 (D. Mass. 2010). In its ruling, the Court concluded that although the Coast Guard violated the NEPA in promulgating the 2007 RNA, this error was harmless because "the substance of the Coast Guard's actual rulemaking analysis was the functional equivalent of what an environmental impact

statement would have generated." Id. at 175. After this ruling, in April 2010, AWO, along with several other plaintiffs, sued the Commonwealth in a separate suit ("AWO's Suit") to permanently enjoin the enforcement of certain provisions of MOSPA. See Am. Waterways Operators. v. Patrick, Civ. A. No. 10-cv-10584-DPW (D. Mass. 2010), D. 1.

### B. The First Circuit's Directive

The Commonwealth and supporting intervenors appealed this second decision invalidating MOSPA to the First Circuit. D. 31-2 ¶ 22; D. 37-2 ¶ 25. In 2011, the First Circuit reversed summary judgment in the Coast Guard's favor, vacated the injunction and remanded to district court with instruction to remand it to the Coast Guard. See United States v. Coal. for Buzzards Bay, 644 F.3d 26, 39 (1st Cir. 2011). The First Circuit held that the Coast Guard did not comply with the NEPA by failing to analyze the environmental impact on its proposed action and "return[ed] the case to district court with instruction to remand it to the Coast Guard for further proceedings consistent with this opinion." Id. The First Circuit took "no view of the overarching preemption issue, the applicability vel non of any other extraordinary circumstances exception, the APA issue, or any of the parties' other contentions." Id.

In 2011, following the First Circuit's order, this Court (Woodlock, J.) closed the case "without prejudice to the right of any party to restore it to the active docket upon termination of the remand proceedings by filing an appropriate motion." United States v. Massachusetts, Civ. A. No. 05-cv-10112-DPW (D. Mass. 2011), D. 187. The parties in AWO's Suit proposed the same closing and the Court ordered the case closed during the duration of remand for the Coast Guard's case challenging MOSPA. See Am. Waterways Operators. v. Patrick, 10-cv-10584-DPW (D. Mass. 2011), D. 50.

5

### C. The Coast Guard's Environmental Impact Review

In 2012, the Coast Guard released a Notice of a Draft Environmental Assessment ("Draft EA") and contracted for a "Buzzards Bay Risk Assessment." D. 31-2 ¶¶ 32-37. The Buzzards Bay Risk Assessment was released on November 20, 2012 and revised on January 22, 2013. D. 31-2 ¶ 37. The Coast Guard prepared a Final Environmental Assessment ("Final EA"), dated December 2013, and published notice of the Finding of No Significant Impact ("FONSI") based on the Final EA on February 26, 2014. D. 31-2 ¶¶ 42-43; D. 37-2 ¶ 27.

### D. The Coast Guard Decides Not to Pursue Litigation

In August 2014, AWO, as an Intervenor-Plaintiff, and the Coast Guard moved to restore the case to active docket. D. 31-2 ¶¶ 47-49; D. 37-2 ¶ 28-29. The Commonwealth opposed. D. 31-2 ¶¶ 50; D. 37-2 ¶¶ 30-31. Because single-hull tank vessels were largely phased out on January 1, 2015, the dispute over MOSPA's manning requirements for single-hulled vessels became moot on that date. D. 36-1 ¶ 32; D. 50-1 ¶ 108. The only MOSPA provision remaining in dispute, therefore, was the tugboat escort requirement. D. 36-1 ¶ 33; D. 50-1 ¶ 109. On January 15, 2015, this Court (Woodlock, J.) held a hearing to determine whether to reopen the case. United States v. Massachusetts, No. 05-10112-DPW (D. Mass. Jan 27, 2015), D. 201. After the hearing, on February 5, 2015, the United States withdrew its motion to restore the case to active docket. Notice, United States v. Massachusetts, No. 05-10112-DPW (D. Mass. Feb. 5, 2015), D. 203. AWO, as an intervening plaintiff, also withdrew its motion to restore the case to active docket. Notice, United States v. Massachusetts, No. 05-10112-DPW (D. Mass. Feb. 17, 2015), D. 205. The Coast Guard views the litigation as closed and has "no intent to look back at the 2007 RNA." D. 31-2 ¶ 59; D. 37-2 ¶ 41.

**IV.     Procedural History**

AWO instituted this new action on October 4, 2018. D. 1. The Court heard the parties on the pending motions and took these matters under advisement. D. 58.

**V.      Discussion**

AWO asks this Court to compel action by the Coast Guard to comply with the First Circuit's remand order and to set a schedule for reopening the litigation on the merits. D. 31-1 at 6. AWO seeks relief under both the APA and by writ of mandamus. D. 1 at 22. As AWO explains in its papers, "whether jurisdiction is specifically predicated on the mandamus statute (28 U.S.C. § 1361), on the APA (5 U.S.C. § 706), or both, makes little practical difference, as the result and analysis are the same." D. 55 at 3 (quoting Ctr. for Biological Diversity v. Brennan, 571 F. Supp. 2d 1105, 1124 (N.D. Cal. 2007)). This Court, nevertheless, reviews AWO's request for relief under both the APA and the Mandamus Act. Before this Court considers the merits, it must first address whether AWO has standing to bring this case.

     **A.      Standing**

Article III of the Constitution limits federal courts to deciding cases or controversies. See U.S. Const. art. III § 2; Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 52 (1st Cir. 2014). The justiciability doctrines of standing and ripeness are rooted in Article III and must be addressed as a threshold inquiry prior to adjudication of the merits of the underlying case. See Reddy v. Foster, 845 F.3d 493, 499-500 (1st Cir. 2017). This standard applies to claims brought under mandamus and the APA. See Giddings v. Chandler, 979 F.2d 1104, 1110 (5th Cir. 1992) (plaintiffs bringing mandamus claims must have standing); Union of Concerned Scientists v. Wheeler, 377 F. Supp. 3d 34, 41-42 (D. Mass 2019) (claims brought under the APA must meet the threshold

issue of standing). Because the Coast Guard disputes AWO's standing to bring these claims, D. 36 at 20, this Court considers it as a threshold issue.

The constitutional requirement of standing necessitates that a plaintiff show "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 92 (1st Cir. 2008) (internal quotation marks omitted) (quoting Me. People's Alliance v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006)).

*1. Injury of Having to Comply with Local Regulations*

First, AWO asserts that it is "subject to a local regulatory regime" that "imposes additional costs." D. 31-1 at 3. Standing requires that plaintiffs "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Injuries that stem from independent acts of third parties are ordinarily not cognizable because they are neither fairly traceable to the defendant nor likely to be redressed by the requested relief. See Katz v. Pershing, LLC, 672 F.3d 64, 71-72 (1st Cir. 2012) (explaining that "[b]ecause the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party"); NAACP, Boston Chapter v. Harris, 607 F.2d 514, 519 (1st Cir. 1979) (agreeing that a federal court can only redress "injury that can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court" (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976))).

The injury that AWO is subject to a more burdensome local regulatory scheme is neither fairly traceable to the Coast Guard nor likely to be redressed by the requested relief. The fact that

AWO is subject to a Massachusetts regulation stems from the "independent act of some third party"—namely the Commonwealth's enactment and enforcement of MOSPA. Id. Second, even if this Court required the Coast Guard to conduct additional analysis under the NEPA, it would not likely redress the injury because AWO would still have to succeed on a preemption suit. See Am. Chemistry Council v. Dep't of Transp, 468 F.3d 810, 817 (D.C. Cir. 2006).

American Chemistry Council v. Department of Transportation illustrates this point. See id. There, the plaintiff, American Chemistry Council, challenged a Department of Transportation rule by claiming that one of plaintiff's members had to comply with a costly local code that the Department of Transportation failed to preempt. See id. at 816. The plaintiff argued that the Department's failure to regulate broadly caused injury because a broader regulation would have preempted the cost-incurring local code. The court held that this injury did not confer standing because the injury was not "fairly traceable" to the defendant nor was it "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 817 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Similarly, here, the fact that AWO is subject to additional regulations in Massachusetts suggests that, at most, AWO's injuries are attributed to the Commonwealth, not the Coast Guard. Even if the Court ordered the Coast Guard to conduct additional environmental analysis, AWO would have to succeed on a preemption suit to redress their injury. Moreover, if AWO could show that preemption is likely, the Coast Guard can always waive preemption, further attenuating redressability. See id. at 818 (stating that an agency's "ability to waive preemption constitutes yet another obstacle for petitioners . . . [and absent a showing regarding the likelihood of waiver,] petitioners' broad assertion that [the regulation] would be preempted appears even more 'speculative'" (quoting Defenders of Wildlife, 504 U.S. at 561)). This Court holds, therefore, that

9

having to comply with Massachusetts regulations involves multiple levels of attenuation to the Coast Guard's action and thus cannot confer Article III standing.

### 2. Injury of the Inability to Gain Final Resolution

AWO subsequently identifies its injury as the "inability, caused by the Coast Guard's failure to commit to completion of its NEPA analysis, to gain final resolution of constitutional claims concerning the lawfulness of Massachusetts' state statutory and administrative requirements." D. 49 at 18-19. This injury, AWO asserts, is caused by the Coast Guard's failure to commit to completion of its NEPA analysis. D. 49 at 18-19.

Even assuming *arguendo* that AWO is somehow prevented from gaining final resolution on its claims, organizational interests alone are insufficient to confer standing.[2] See Sierra Club v. Morton, 405 U.S. 727, 739 (1972) (explaining that "an organization whose members are injured may represent those members in a proceeding for judicial review . . . . [b]ut a mere 'interest in a problem' . . . is not sufficient by itself to render the organization 'adversely affected'"). Instead, for an organization to establish injury in fact, it must demonstrate that some of its members have suffered some real injury for the purpose of standing. See e.g., Animal Welfare Inst. v. Martin, 623 F.3d 19, 25-26 (1st Cir. 2010) (holding that affidavits from its members who visited wildlife refuges and parks to observe wildlife adequately alleged that the organization suffered injury).

The injury of the "inability to . . . gain final resolution of constitutional claims," D. 49 at 18-19, represents an organizational interest in the litigation. Alone, this interest does not represent concrete injury. See Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1375 (1st Cir. 1992) (explaining that a "mere interest in a situation—no matter how deeply felt, or how important the

---

[2] It is unclear to the Court that AWO actually suffered such an injury where AWO voluntarily closed its own case while the Coast Guard conducted a review. D. 31-2 ¶¶ 29, 3.

issue—will not substitute for actual injury"). The only non-abstract injury suggested by AWO is that its members have had to comply with MOSPA at increased cost to them. As this Court explained above, this injury does not confer standing because it is too attenuated to the Coast Guard's conduct. See Am. Chemistry Council, 468 F.3d at 816-19. AWO, therefore, has not demonstrated any concrete injury attributable to the Coast Guard and thus lacks constitutional standing to bring this claim.

### B. Relief Under the APA

Even assuming AWO has constitutional standing to assert a claim under the APA, its APA claim fails. The Administrative Procedure Act ("APA") grants courts the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To compel agency action under the APA, the plaintiff must have standing to sue under the statute, see Conservation Law Found., Inc. v. Jackson, 964 F. Supp. 2d 152, 159 (D. Mass. 2013), and the Court must conclude that an agency "failed to take a discrete agency action that it is required to take." Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., 674 F.3d 97, 99 (1st Cir. 2012) (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (quotations and emphasis omitted)). AWO's claim passes neither test.

*1. Statutory Standing*

To compel agency action under section 706 of the APA, a plaintiff must have statutory standing under the act. Conservation Law Found., Inc., 964 F. Supp. 2d at 159. This APA requirement is "in addition to the requirement[] imposed by Article III of the Constitution . . . ." Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co., 522 U.S. 479, 488 (1998). AWO argues that they need only have suffered a legal wrong to have standing under section 706, D. 55 at 4, but section 706 does "not declare self-actualizing substantive rights, but rather, . . . merely

11

provide[s] a vehicle for enforcing rights which are declared elsewhere." Perales v. Casillas, 903 F.2d 1043, 1050 n.4 (5th Cir. 1990). Thus, "[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'" El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review, 959 F.2d 742, 753 (9th Cir. 1992) (citations omitted). For a plaintiff to have statutory standing under the APA, the interest sought to be protected by the complainant must arguably be within the zone of interests protected or regulated by the statute. See Bennett v. Spear, 520 U.S. 154, 175 (1997) (citing Ass'n. of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)). Here, AWO seeks "an order directing the Coast Guard to conduct the ordered 'further level of review analysis' in compliance with NEPA." D. 50 at 1. Thus, the relevant statute whose violation AWO claims is the legal basis for its APA claim is the NEPA.

The NEPA is an environmental law passed with the purpose to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man . . . ." Andrus v. Sierra Club, 442 U.S. 347, 349 (1979) (quoting 42 U.S.C. § 4321) (internal quotation marks omitted). Numerous courts have explained that the zone of interests protected by the NEPA includes environmental interests: not merely economic ones. See Gunpowder Riverkeeper v. FERC, 807 F.3d 267, 274 (D.C. Cir. 2015) (stating that "[t]he zone of interest protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone" (citing ANR Pipeline Co. v. FERC, 205 F.3d 403, 307-08 (D.C. Cir. 2000))); Ecosystem Inv. Partners v. Crosby Dredging, LLC, 729 Fed. App'x 287, 294 (5th Cir. 2018) (explaining that the NEPA's zone of interest covers "environmental injuries and not purely economic ones"); Nev. Land Action Ass'n v. U.S. Forest Service, 8 F.3d

713, 716 (9th Cir. 1993) (collecting cases from the Ninth, Eighth, Fourth and D.C. Circuit); Goethel v. Pritzker, No. 15-cv-497-JL, 2016 WL 4076831, at *8 (D.N.H. July 29, 2016) (agreeing with the D.C. Circuit that a party "must assert an environmental harm in order to come within [the NEPA's] zone of interest" (quoting Gunpowder Riverkeeper, 807 F.3d at 273) (internal quotation marks omitted) (alteration in original)).

Here, AWO has not asserted any environmental interest that would indicate it was within the zone of interest protected by the NEPA. AWO asserts that it is injured by having to comply with local regulations and its inability to gain final resolution on its MOSPA's claims. D. 31-1 at 3; D. 49 at 18-19. Neither of these injuries are environmental. AWO, therefore, has not demonstrated that is has standing under the APA. See Nev. Land Action Ass'n, 8 F.3d at 716.

### 2. *Discrete Agency Action Required*

Even assuming that AWO had statutory standing under the APA, its APA claim fails because AWO does not request clear, nondiscretionary action. A claim for agency inaction can only survive where plaintiff asserts that an agency "failed to take a discrete agency action that it is required to take." Norton, 542 U.S. at 64 (emphasis in original). A court may compel an agency to "'perform a ministerial non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" Id. (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis in original). Although AWO continues to modify its requested relief creating a moving target for this Court, the Court, considers AWO's requests.

#### a) AWO's Request that the Coast Guard Set a Schedule for Reopening the Litigation on the Merits

As part of its request for relief, AWO asks this Court to set a schedule for reopening litigation. D. 31-1 at 6. In its reply, AWO appears to abandon this request and acknowledges that it is "discretionary to the Government." D. 49 at 7. Nevertheless, AWO suggests that the Coast

13

Guard is required to engage in some sort of additional litigation by asking this Court for an order to comply with "remand directives of the First Circuit," D. 1 at 22, then describing the remand order as requiring "further proceedings," D. 49 at 7.

Such litigation decisions are "generally committed to agency discretion by law and are not subject to judicial review under the APA." See Didrickson v. U.S. Dep't of Interior, 982 F.2d 1339 (9th Cir. 1992) (citing 5 U.S.C. § 701(a)(2)); Heckler v. Chaney, 470 U.S. 821, 831 (1985) (explaining that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"). Decisions not to pursue preemption arguments are also within agency discretion. See Safe Sts. Alliance v. Hickenlooper, 859 F.3d 865, 898 (10th Cir. 2017) (explaining that the decision to pursue and enforce the supremacy of federal law is "generally committed to an agency's absolute discretion" (quoting Heckler, 470 U.S. at 831)). Thus, to the extent that AWO asks this Court to direct the Coast Guard to engage in discretionary litigation functions, this Court declines to do so because the APA cannot direct a discretionary act. See Scarborough Citizens Protecting Res., 674 F.3d at 101 (declining to compel agency action under the APA because enforcement decisions are discretionary).

     a)  AWO's Request that the Coast Guard Comply with the First Circuit's Remand Order

Second, AWO asks this Court for an order to comply with the First Circuit's remand order. D. 31-1 at 6. To the extent the First Circuit directed the Coast Guard to act, it directed the agency to comply with the NEPA. See Coal. for Buzzards Bay, 644 F.3d at 31. The NEPA requires that the agency make some environmental evaluation for undertaking major federal action likely to affect the environment. See Scarborough Citizens Protecting Res., 674 F.3d at 102 (explaining that the NEPA established an assessment process that officials must follow before undertaking a

14

"major Federal action significantly affecting the quality of the human environment"). The role of the judiciary's review under the NEPA is to "[e]nsure that the agency has taken a 'hard look' at environmental consequences." Coal. for Buzzards Bay, 644 F.3d at 31 (1st Cir. 2011) (quoting Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21 (1976)) (internal quotation marks omitted). Courts, therefore, review whether agencies have conducted an environmental evaluation. Id. at 31. While agencies have no discretion on whether to conduct an environmental analysis for federal action significantly affecting the quality of the human environment, they do have discretion as to what shape this analysis takes. See id. at 34-36 (distinguishing between judicial review of the fact of whether an agency conducted an environmental impact analysis and judicial review of the substance of this analysis); Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 763 (2004) (explaining that the substance of how an agency conducts its review will be set aside if an agency "abuse[d] its discretion" (citing 5 U.S.C. § 706(2)(A)).

Here, AWO's request is neither clear nor nondiscretionary as required by the APA. The First Circuit concluded that the Coast Guard had eschewed "any meaningful environmental inquiry," Coal. for Buzzards Bay, 644 F.3d at 36, and, therefore, "failed to satisfy its obligations under the NEPA," id. at 39. The First Circuit made clear that its grievance was not with the substance of the Coast Guard's environmental review, but instead with the fact that the Coast Guard had failed to conduct a meaningful review at all. See id. at 34-36. Since the First Circuit's decision, the Coast Guard has prepared a Draft EA, a Buzzards Bay Risk Assessment, a Final EA and published a FONSI based on the Final EA. D. 31-2 ¶¶ 32-37; D. 31-2 ¶¶ 42-43; D. 37-2 ¶ 27. It cannot be said that the Coast Guard, at this point, has eschewed any meaningful environmental inquiry at all.

AWO wants the Coast Guard to "finalize the NEPA analysis undertaken in the 2012-2014 period." D. 31-1 at 8. While it is unclear what exactly AWO wants the Coast Guard to do in addition to what it has already done, its grievance seems to be with the substance of the Coast Guard's environmental analysis as it stands. To the extent that AWO asks this Court to direct a particular type of NEPA analysis, this requests discretionary action. Pub. Citizen, 541 U.S. at 756 (explaining that "NEPA does not mandate particular results" (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989))); Sierra Club v. U.S. Dep't of Transp., 753 F.2d 120, 126 (D.C. Cir. 1985) (recognizing that "[a]n agency has broad discretion" in conducting its NEPA review). Accordingly, AWOs requests are improper under the APA.

### C. **Mandamus Relief**

The Mandamus Act also does not afford AWO relief here. This act confers this Court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is regarded as an extraordinary writ reserved for special situations." In re City of Fall River, 470 F.3d 30, 32 (1st Cir. 2006). To prevail on a claim for mandamus against an agency, a plaintiff must show that the agency has acted or failed to act in disregard to a clear legal duty and that there be no adequate conventional means for review. See id. (noting that among mandamus's "ordinary preconditions are that the agency or official acted (or failed to act) in disregard of a clear legal duty and that there be no adequate conventional means for review"). When used, mandamus should be dispensed "sparingly and only in pursuance of the most carefully written prescription . . . ." In re Recticel Foam Corp., 859 F.2d 1000, 1005 (1st Cir. 1988).

*1.     Clear Non-Discretionary Action*

Even if AWO were to survive the threshold constitutional standing issues, AWO's claim under the Mandamus Act fails for the same reason it fails under the APA: AWO requests an order compelling discretionary action. The APA was fashioned after the mandamus remedy to carry forward the "traditional practice prior to its passage" of limiting enforcement to non-discretionary action. Norton, 542 U.S. at 63. The mandamus remedy like the remedy under the APA, therefore, is limited to enforcement of a specific, unequivocal demand to which an official has "no discretion whatsoever." Id. at 63-64. As this Court explained above, none of AWO's requests are for clear nondiscretionary action. Thus, relief is also improper under mandamus.

*2.     Duty to the Plaintiff*

AWO's mandamus claim fails for an additional reason: the Mandamus Act limits recovery to plaintiffs to whom defendants owe a duty, and AWO cannot identify any duty the Coast Guard owes to it. 28 U.S.C. § 1361.[3] The Mandamus Act compels performance of a "duty owed to the plaintiff." 28 U.S.C. § 1361; Diaz v. Matal, 268 F. Supp. 3d 267, 274 (D. Mass. 2017) (mandamus "provide[s] a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty" (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984))). For a mandamus action to lie, a plaintiff must identify a source of the duty owed to them. See Coal Operators & Assocs., Inc. v. Babbit, 291 F.3d 912, 915 (6th Cir. 2002) (recognizing that "unless the Act creates a duty by the [defendant] to plaintiffs, mandamus will not lie"). For example, an independent statutory scheme

---

[3] This challenge is properly characterized as a statutory standing argument because it asserts that AWO is not a plaintiff encompassed within the meaning of the Mandamus Act. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S.118, 126 (2014) (explaining that arguments that seek to ascertain the scope of a statutory remedy are statutory standing arguments); United States v. Catala, 870 F.3d 6, 10 (1st Cir. 2017) (acknowledging that "[s]tatutory standing is a horse of a different hue [from constitutional standing] . . . [as] it relates to whether the plaintiff has a cause of action under a particular statute").

or a judicial directive could each create a duty on which a plaintiff could premise their mandamus claim. See id. (acknowledging that mandamus standing may be predicated on a duty created by statute); In re Core Commc'ns, 531 F.3d 849, 855 (D.C. Cir. 2008) (noting that it was undisputed that the defendant had a duty to the plaintiff who had secured a remand order).

### a) Mandamus Act Standing Based on the First Circuit's Remand Order

The directive the First Circuit made was to "return the case to the district court with instruction to remand it to the Coast Guard for further proceedings consistent with this opinion." Coal. for Buzzards Bay, 644 F.3d at 39. AWO cites a series of cases where courts, through the Mandamus Act, enforce remand orders. D. 31-1 at 5; D. 55 at 7-8. In those cases, the litigation was stayed pending defendant-agency action while plaintiffs waited to pursue their rights. In each of these cases the parties seeking mandamus were the parties that obtained the remand order and could not pursue their claims absent agency action. See In re Core Commc'ns, 531 F.3d at 849; In re People's Mojahedin Org. of Iran, 680 F.3d 832, 833 (D.C. Cir. 2012); Radio-Television News Dirs. Ass'n v. FCC, 229 F.3d 269, 271-72 (D.C. Cir. 2000); Potomac Elec. Power Co. v. ICC, 702 F.2d 1026 (D.C. Cir. 1983). This reflects the traditional rule that only the parties for whose benefit the remand order was entered, may enforce them. See Gautreaux v. Pierce, 743 F.2d 526, 533 (7th Cir. 1984) (explaining that a party cannot enforce an order that "was not entered for their benefit").

Here, unlike the cases AWO cites, AWO was not the beneficiary of the order, the Coast Guard has not prevented AWO from seeking resolution of its rights nor has the Coast Guard "effectively nullified" a determination that a rule is invalid. See In re Core Commc'ns, 531 F.3d at 856. The First Circuit's directive did not create a duty that the Coast Guard supply AWO the more favorable preemption terms they seek.

a) <u>Mandamus Act Standing Based on a Statutory Scheme</u>

When Mandamus Act standing is premised on a statutory duty, courts consider whether a plaintiff's complaint falls within the zone of interests protected by the law the plaintiff seeks to enforce. See <u>Giddings v. Chandler</u>, 979 F.2d 1104, 1108 (5th Cir. 1992) (recognizing that "a duty is owed to the plaintiff for the purpose of the Mandamus Act if—but only if—the plaintiff falls within the 'zone of interest' of the underlying statute"). AWO argues that the APA itself is the source of the legal duty by asserting that the statutory basis for the legal form of relief is the "APA itself, as well as the Mandamus Act and All Writs Act." D. 55 at 4. As explained above, the APA alone cannot be the source of the duty because it also requires an independent statutory duty and AWO does not identify an independent statute to which it is owed a duty under. See <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, 567 U.S. 209, 224 (2012) (explaining that a "person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: [t]he interest he asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated" (quoting <u>Ass'n of Data Processing Serv. Org., Inc.</u>, 397 U.S. at 153)).

**VI.** **Conclusion**

For the reasons stated above, the Court DENIES AWO's motion, D. 31, and ALLOWS the Coast Guard's motion, D. 37.

**So Ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge